22953.   HUCKABEE *v.* GRACE.

622

DECIDED FEBRUARY 27, 1934.

*Bennett & Peacock,* for plaintiff in error. *W. H. Burt,* contra.

MacIntyre, J. Only the rulings in headnotes 1, 2, 3, 4, 5, and 13 will be discussed.

■ The general demurrer to the plaintiff's petition, on the ground that it set out no cause of action, first comes to our attention. We quote the petition, with the exception of those paragraphs alleging injuries, as follows: "On the 9th day of March, 1932, at or about the hour of four o'clock p. m., the afternoon being clear, defendant while driving his automobile on North Madison Street in Albany, . . Georgia, which street is paved, and in the 900 block, negligently and carelessly drove the same with great force and violence against your petitioner, knocking him to the pavement and inflicting serious hurts. . . 3. The segment of Madison Street in this block (between Second and Third Streets) is approximately 420 feet long, and Madison Street runs north and south, and this segment is in the City of Albany, . . and the street is approximately 36 feet in width, and the middle of the street is traversed by an east and west public alley or highway 20 feet in width. The sidewalks on both sides of the street are paved, approximately 6 feet in width, and there is a parkway of approximately 18 feet between the street and the sidewalk on the east side. 4. Petitioner, who is 8 years of age, lives in this block on the east side, . . his home being located at the southeast intersection of Madison Street and aforementioned public alley, and on the day of his injuries and just prior thereto, he was riding a bicycle about [the?] middle of the street in this block going southward, and about 180 feet from Third Street and alongside the middle of a tractor and two scrapes (being machinery or equipment of the City of Albany for working and repairs to streets), and which machinery longitudinally occupied a distance of approximately 65 feet, and the tractor with the two scrapes attached going in same direction as your petitioner, traveling at about the rate of speed of the average stride of a human being or about four miles an hour, and the tractor being on the west side of said street. 5. At this time there was an automobile parked in the front of petitioner's home and against the street curbing, and approximately 160 feet from Second Street, and approximately 30 feet south from said east and west public alley.

6. Petitioner crossed to the east portion of Madison Street and across the intersection of said street and public alley, to put down his bicycle for the purpose of taking his position up again alongside the tractor and scrapes, and, having deposited his bicycle at the southeast corner of Madison Street and the public alley on the parkway, and without having departed from the eastern boundary line of the street, and with but a moment's pause or hesitation for the purpose of laying his bicycle along the curb and on the parkway, he turned and after having taken 4 or 5 steps in a western direction toward the moving machinery, which at all times hereinbefore and herinafter mentioned was the object of his interest and excitement and boyish curiosity, he was, suddenly and without warning or notice or signal, struck and cut down by an automobile driven by the defendant, and thrown with such force to the pavement as to cause serious and painful and permanent injuries, etc. . . 7. Defendant, just prior to the injuries, had turned his car into Madison Street going north from Second Street, and as the defendant pulled into Madison Street he saw petitioner at his location described in paragraphs 4 and 6 above, or should, by the exercise of ordinary care and diligence and a reasonable lookout, have clearly discerned petitioner, who was in full view of defendant with no obstructions, and riding in a direction toward defendant, as hereinbefore stated, and the defendant should at all times have seen the petitioner, and the movements and acts and conduct of the petitioner and the object of his interest, attention, and fascination as hereinbefore described, up to the time of his injury, were all plainly noticeable, visible, and observed by defendant, or should have been clearly observed by defendant by the exercise of a reasonable lookout and ordinary care on his part. 8. Defendant's automobile struck your petitioner about the right front wheel hub cap on the shin of his right leg, knocking his feet from under him and precipitating his head and face against the right front running board, about 8 inches from the union of the running board and fender. . . 14. The location of the defendant's automobile at the time of the injury was as follows: approximately nine feet from the curb of Madison Street, and approximately two feet south of the prolongation of the east and west public alley traversing Madison Street, 15. Defendant's automobile proceeded a distance of approximately twenty-seven feet in a slightly northeast direction before the defend-

ant brought it to a stop, without any deflection of the course of his automobile prior to the injury or any at the time or after the injury in any manner whatsoever. 16. Petitioner alleges that on this occasion, on account of his tender years and immature mind and lack of experience, and the fact that he was engrossed in play and his attention being directed on the machinery, all of which situation, petitioner says, defendant was cognizant [of] or should have ascertained by the exercise of ordinary care and a reasonable lookout, petitioner was unable to escape when he discovered the automobile of defendant was upon him, no warning, notice or signal having been given, and petitioner's injuries and damages are due entirely to the negligence, carelessness, and inattention to duty of [on?] the part of the defendant in the following particulars: *a.* Defendant did not operate his automobile on this occasion so as to avoid injuring your petitioner, and with due regard and consideration to the rights of your petitioner as a pedestrian on the streets of the City of Albany. . . *b.* Defendant operated his automobile at the crossing or intersection of Madison Street and the east and west public alley aforementioned at a greater rate of speed than ten miles an hour, in violation of section 10, paragraph 3 of the City of Albany traffic ordinance, passed November 22, 1927. *c.* Defendant did not reduce his speed at crossing or intersection of said highways as required by the laws of Georgia. *d.* Defendant operated his automobile on a public street or highway at a speed greater than is reasonable and safe, having due regard for the traffic and common use of said street or highway on this occasion. *e.* Defendant operated his automobile in approaching the intersection of the highways or street of Madison and the public alley aforementioned without having the vehicle under immediate control, and operated the same at a greater speed than ten miles an hour. *f.* Defendant operated his automobile in violation of section 15 of the traffic ordinance of the City of Albany aforementioned in the following respects: reckless driving which is made unlawful by this ordinance shall consist in (B) not having vehicle in absolute control at crosswalks, crossings, or street intersections; (C) failure to exercise due care at all times and places; (D) violating any provision of the traffic regulation in such manner as to cause danger or failing to observe every reasonable precaution for safety. *g.* Defendant operated his automobile without keeping a reasonable look-

out, and defendant saw petitioner in the street or in the exercise of ordinary care should have seen him in such position that his childish impulses might reasonably be expected to place him in danger from passing vehicles, and defendant failed to properly check his speed or properly operate his automobile so as to protect petitioner from injury and hurt at his hands. *h.* Defendant saw petitioner in a place of danger as to any passing automobile or should have seen him, and should have increased his vigilance and care accordingly, but defendant failed to take any additional precaution so as to avoid injuring your petitioner, a child of tender years. *i.* Defendant should have proceeded with his automobile under such control, petitioner being in a perilous position and on account of his immature years, not appreciating the probable consequences of his acts, and this was well known to defendant, or should have been known by him by the exercise of ordinary care, that if necessary to avoid injury, defendant could have brought his automobile to a stop. *j.* Defendant failed to use any effort to protect your petitioner from injury by the application of his brakes or the deflection of the course of his car after your petitioner's presence was known to the defendant or should have been known to him by the exercise of a reasonable lookout. 17. That said negligent acts of defendant, either jointly, concurrently, or singly, caused the injuries and damages to your petitioner and were the proximate cause thereof, and petitioner on account of his immature age was unable to protect himself against defendant's negligence on this occasion." The petition was afterward amended in some minor details and by adding the following paragraphs: "16-*k.* Defendant failed to give plaintiff any warning whatever of the approach of said automobile and failed to have said automobile under reasonable and immediate control at the time so as to avoid striking plaintiff. 16-*l.* Defendant was negligent in driving said automobile at the unnecessary, excessive, reckless and dangerous speed of about 20 or 25 miles an hour under congested and unusual conditions prevailing at the time and place. 16-*m.* Defendant failed to keep ordinary and reasonable watch and lookout ahead for the pedestrians ahead of said automobile and thus avoid striking your petitioner."

After a careful consideration of the facts alleged in the petition, which are to be taken as true on general demurrer, we are so confidently of the opinion that under the principles of law applicable to

this case, as announced by our courts and those of foreign jurisdictions, the petition sets out a valid cause of action against the defendant, that we forego discussion of the demurrer. We think the question of whether or not the defendant exercised ordinary care under the circumstances to avoid injuring the plaintiff, a child of tender years, and of what was the proximate cause of the injury, and similar questions, are for determination by a jury. See *O'Dowd* v. *Newnham,* supra; *Moye* v. *Reddick,* 20 *Ga. App.* 649 (93 S. E. 256); *Cohn* v. *Buhler,* 30 *Ga. App.* 14 (116 S. E. 864); *Davies* v. *West Lumber Co.,* 32 *Ga. App.* 460 (123 S. E. 757); *Giles* v. *Voiles,* supra; *Ware* v. *Lamar,* 16 *Ga. App.* 560 (85 S. E. 824); *Sheppard* v. *Johnson,* 11 *Ga. App.* 280 (75 S. E. 348). See also 1 Blashfield Enc. of Law, 184-5, 255-7, 297-9. This court certainly could not say, under all respectable authority, that from the facts alleged in the petition no cause of action was set forth.

■ It is charged in the petition that "defendant operated his automobile at the crossing or intersection of Madison Street and the east and west public alley aforementioned at a greater rate of speed than ten miles per hour, in violation of section 10, paragraph B, of the City of Albany traffic ordinance, passed November 22, 1927." The following quoted ordinance was introduced in evidence: "At all crossings, street intersections, . . the rate of speed shall not exceed ten miles per hour." Various exceptions hover around the application of this ordinance to the case at bar. The judge charged the jury that a violation on the part of the defendant would be negligence per se. Exception is taken to this charge on the ground that the plaintiff was not among those persons for whose benefit the ordinance was passed, and that therefore a violation of such ordinance would not be negligence per se as to him, as the trial judge charged. A consideration and decision of this question will dispose of many exceptions made by the plaintiff in error. In every tort there must be a violation of some duty owed, whether it be an act of commission or omission. This principle is elementary. All municipal law has for its purpose the regulation of the conduct of human beings with respect to each other and their property. It is based on the relative rights of one person to another. A violation of those rights is termed negligence. However, it is decided that answerable negligence exists *only* where the party whose negligence occasions the loss owes a duty arising from con-

tract or otherwise to the person sustaining the loss. In other words, in order to create liability for personal injury, the plaintiff must show that the defendant was lacking in some duty which he owed to him. It has been said that "a man is entitled to be as negligent as he pleases towards the whole world, if he owes no duty to them." Le Lievre *v*. Gould (1893), 1 Q. B. 419. "The ideas of negligence and duty are strictly correlative, and there is no such thing as negligence in the abstract; negligence is simply neglect of some care which we are bound by law to exercise *toward somebody*." (Italics ours.) Thomas *v*. Quartermaine, 18 Q. B. D. 685. Therefore, a proper conception of actionable negligence involves the idea of a duty to act in a particular way towards another, and a violation of that duty by doing otherwise, to the injury of that person to whom the duty was owed. The duty violated, whether from omission or commission, may, by operation of law, arise between the parties who by contract bring themselves into certain relations. It may arise independently of any contract relation and be imposed by statute, ordinance, or rule of the common law, and be due only to particular persons or classes of persons. Or this duty may relate to all classes of persons,—as to refrain from doing an act obviously dangerous. "The fool casteth firebrands and arrows." "To constitute an act of omission the foundation of an action of law, it must appear that a duty was due by the actor to the person claiming to have been injured by the act. The rule of reasonable care *necessarily* includes *two persons* or one person and some right or property of another. It is a rule of relation. If there is no relation, there is nothing upon which the rule can operate. The rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated. But as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island, and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them. Unless and until one is brought into relation with other men, or property, or rights, he has no obligation to act with reference to them, and this is true whether the obligation be called legal, moral or reasonable." 20 R. C. L. 45-6. Again, it has been said by a "thoughtful" judge, as quoted in the same volume of R. C. L.: "It has usually been held that facts which create a relation and

therefore a duty to one do not establish the same obligation to all mankind. To be within the right created, the complaining party must show facts which make the reason for claiming a relation applicable to him. The proposed rule is an abandonment of this idea and seeks to make the obligation to use care, which springs from the relationship, a duty owed to everybody who by chance comes within the range of the influence of the act complained of. The argument is that since the act is one which the defendant should have refrained from doing, it is just that he be responsible for all its consequences. But this is a partial view of the situation only. The act is not wrongful in itself. Its wrongfulness is founded in its probable effect upon others who are in some relation with the actor. Remove those related parties from the situation, and the act is entirely lawful. As to the unrelated parties the happening is a pure accident."

That the duty violated must be owed to the person who occasions the loss is indispensable to actionable negligence is well settled in this State and in foreign jurisdictions. If there is no person upon whom the duty can operate prescribed by the statute, of course, no duty has been violated. Notable among the cases embodying this principle in this State are those decisions with regard to the duty of a railroad company to obey the "blow-post law" with regard to persons or property not on the highway, either approaching, crossing or having just crossed the railroad on the highway. The principle case is that of *Atlanta & Charlotte Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), where it was held, following *Holmes* v. *Central Railroad &c. Co.*, 37 *Ga.* 593, that "relatively to a person who, without license from the company, is walking upon a railway track on a trestle, though such trestle be situated between a blow-post and a public crossing, the omission of the engineer to comply with the statutory requirements as to giving signals and checking the speed of the train is not negligence, in as much as these requirements raise no duty as between the company and strangers who may be upon the track elsewhere than at a public crossing." In the opinion, Lumpkin, J., among many other decisions and text-books, quotes approvingly the following: "If there is no duty, there can be no negligence. If the defendant owes a duty but does not owe it to the plaintiff, the action will not lie." 1 Shear. & Redf. Neg. § 8." And "'In order to main-

tain an action for negligent injury, it must appear that there was a legal duty due from the person inflicting the injury to the person on whom it was inflicted. . . It is not sufficient that there be a general duty to the public which is violated, but in all civil cases, the right to enforce such duty must reside in the individual injured because of a duty due him from his injurer, or he can not recover.' Am. & Eng. Enc. of Law, vol. 16, title 'Negligence,' pp. 411-12." Among the cases following this rule are *East Tenn., Va. & Ga. Ry. Co.* v. *Smith,* 94 *Ga.* 580 (20 S. E. 127); *Martin* v. *Georgia R. &c. Co.,* 95 *Ga.* 361 (22 S. E. 626); *Georgia R. &c. Co.* v. *Clary,* 103 *Ga.* 639 (30 S. E. 433); *Central of Ga. Ry. Co.* v. *Ross,* 107 *Ga.* 73 (32 S. E. 904); *Atlanta, Knoxville & Northern Ry. Co.* v. *Durham,* 108 *Ga.* 547 (34 S. E. 332); *Central of Georgia Ry. Co.* v. *Neidlinger,* 110 *Ga.* 329 (35 S. E. 364); *Ga. R. &c. Co.* v. *Auchinachie,* 142 *Ga.* 513 (83 S. E. 127); *Southern Ry. Co.* v. *Pugh,* 143 *Ga.* 295 (84 S. E. 968); *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1 (165 S. E. 37); *Ga. R. &c. Co.* v. *Williams,* 3 *Ga. App.* 272 (59 S. E. 846); *Atlantic Coast Line R. Co.* v. *Adams,* 7 *Ga. App.* 146 (66 S. E. 494); *Central of Ga. Ry. Co.* v. *McKey,* 13 *Ga. App.* 477 (79 S. E. 378).

With reference to the same "blow-post law" it has been held that it had no application to a highway which the railroad crossed by means of a trestle. *Central of Ga. Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (89 S. E. 841); *Barton* v. *Southern Ry. Co.,* 132 *Ga.* 841 (64 S. E. 1079, 22 L. R. A. (N. S.) 915, 16 Ann. Cas. 1232); *McElroy* v. *Ga., C. & N. Ry. Co.,* 98 *Ga.* 257 (25 S. E. 439). In *Platt* v. *Southern Photo Co.,* 4 *Ga. App.* 159 (60 S. E. 1068), Powell, J., said: "Before negligence per se, or any other form of negligence, is actionable in a given case, it must appear that the broken duty was due to the plaintiff personally, or as a member of a class. . . In determining whether the violation of a statute is such negligence as to support an alleged cause of action, the court is called upon to examine the law in respect to its purposes; for if it appears that, notwithstanding the violation, none of the things contemplated and sought to be guarded against have ensued, or that the plaintiff is not the person or does not belong to the class to whose benefit or for whose protection the enactment was made, the court will not declare that there is a case of negligence per se as to that cause of action or that plaintiff." See, also in this connection, *Holland* v.

*Sparks,* 92 *Ga.* 753 (18 S. E. 990) ; *Atlanta & West Point R. Co.* v. *West,* 121 *Ga.* 641 (49 S. E. 711, 67 L. R. A. 701, 104 Am. St. R. 179). Many cases involve situations which illustrate the rule of law here discussed. In *Central of Ga. Ry. Co.* v. *Griffin,* 35 *Ga. App.* 161 (132 S. E. 255), it was held that a statute requiring trains to come to a complete stop 50 yards before crossing another railroad-track was enacted to prevent collisions of trains, and therefore a traveler injured by a train on a highway crossing a short distance from where the two railroads crossed could not complain that the train failed to make such stop, as a violation of the statute would not be negligence as to him. In Watts *v.* Montgomery Tractor Co., 175 Ala. 102 (57 So. 471), it was held that an ordinance requiring vehicles to be driven on the right-hand side of a street was not passed for the benefit of street-car companies, and in a collision between a street-car and an automobile the driver of the automobile would not be guilty of negligence per se as to such company even though he was violating such ordinance at the time of the accident. In Johnston *v.* Cornelius, 200 Mich. 209 (166 N. W. 983), it was held that a statute making it a felony to take or use a motor-vehicle without authority does not of itself give a right of action to a pedestrian struck by an automobile being operated in violation of the statute, pedestrians not being among the class intended to be protected by the statute. In Bogdan *v.* Pappas, 95 Wash. 579 (164 Pac. 208), it was held, that the violation of a statute or ordinance providing that any person operating an automobile shall, at the intersection of highways, keep to the right of the intersections of the centers of such highways when turning to the right, could not be relied upon as constituting negligence per se by a passenger in the automobile, seeking redress for injury from the driver's negligence in going over an embankment, the statute being intended to protect travelers and vehicles upon the highway and to enable them to avoid collisions; therefore she was not among the class intended to be protected by the ordinance. In Stoddard *v.* Smathers, 120 Wash. 53 (206 Pac. 933), it was held that a violation of an ordinance requiring vehicles to keep near the right-hand curb so as to leave the center of the street open for overtaking traffic was not negligence per se as to a pedestrian struck at a street intersection; the ordinance not being passed for the benefit of pedestrians. Illustrations might be multiplied, but these few we deem sufficient.

·From the cases cited and discussed we deduce the following: (a) Actionable negligence consists in a violation of some duty owed to another person; (b) in order for the violation of some statutory duty to be negligence per se, the person claiming it as such must be within the class for whose benefit the statute was passed; (c) if there is no person upon whom the violation of the statute can operate, there is no breach of duty; and (d) the court in determining whether the violation of a statutory requirement is negligence per se as to the person complaining thereof upon which a cause of action will rest, will look to the particular statute in respect to its purposes, that is, the evils it was intended to· guard against and the persons it was intended to protect.

We now come to apply these rules to the case sub judice and to the particular exception being considered. With regard to the particular exception, it is well to first state that under the practice prevailing in this State, the court can not as a general rule instruct the jury that certain acts constitute negligence per se. An exception to this general rule, which probably arose from the thought that such should be considered evidence of negligence or "something worse," exists in cases where a valid statute or municipal ordinance requires the performance or nonperformance of certain acts with reference to the person injured. A topographical picture of the situation surrounding the accident we think is sufficiently given in the petition quoted in this opinion. We therefore will not go into detail in regard to it here. The evidence shows substantially that the plaintiff, a child, was proceeding south on Madison street, riding along beside a road scrape, that on reaching near the center of the block, about where the north line of the alley intersected that street, he turned his bicycle southeast across the intersection of the two streets and laid his bicycle down on the curbing just a few feet (the evidence varying from one to three feet by different witnesses) from the southeast corner of the alley in front of his home, and immediately entered the street (the evidence varying as to which direction he took) apparently with the purpose of crossing the street and boarding the scrape, and that, taking a few steps, he came into collision with the defendant's automobile, which was proceeding north on Madison street, a few feet south of the south line of the intersecting alley. In this particular ground of the motion for new trial one of the first exceptions is that the intersecting of an alley

with a street is not "intersecting streets" within the meaning of the ordinance in question. That the intersection of the street upon which the defendant's car was approaching and the alley is "intersecting streets" within the meaning of the ordinance is of little question. Learned counsel for the plaintiff in error does not strenuously press this point, and we will not encumber this already long opinion by citing and discussing the various authorities upon the subject. The alley, so far as the record discloses, was a public thoroughfare. The ordinance itself does not except from its operation intersecting alleys, and we see no reason why we should do it by judicial construction. To us it is a fair construction of this ordinance that the duty there imposed upon drivers of automobiles was intended to be for the benefit of travelers or pedestrians using or about to use such intersection. The phraseology of the ordinance seems to contemplate the protection of such persons, else why does it provide for reduced speed *at* intersections? Assuming, therefore, for the present, that such construction is a proper and legitimate one, it becomes pertinent for this court to inquire whether the plaintiff was such a user of the intersection as to invoke the violation of this ordinance in his favor. After a careful consideration of the evidence we are inclined to the affirmative. It is true that the fact that the plaintiff had come within the bounds of the intersection in crossing the street to put his bicycle in front of his home would not, in any sense of the word, make him a user thereof, but still, as soon as he did deposit his bicycle and started across the street immediatley by the alley, that is, using the alley as an intersecting street, he would be such a user as the ordinance contemplated. We do not think that the fact that the plaintiff never left the confines of Madison Street has any bearing on the question under the other evidence, nor do we think that he would have to be within the confines of the intersection to constitute him a user thereof. His evident purpose was to cross the street, according to his own testimony: "I was going over to the corner, and then I was going to run down there on the sidewalk and come down there. I wanted to get to the tractor to get on it." That possibly it was a coincidence with the child that he laid his bicycle by the corner of the intersection (it being in front of his home) and then proceeded across the street at the intersection would not rob him of the character of being a user of the intersection. This court is of

the opinion, therefore, that the child was a user of the intersection and could therefore invoke the violation of the ordinance by the defendant as negligence per se as to him, and that the charge given by the court was not erroneous. This ruling disposes of the exception here made, but it is thought well to state that the construction assumed above by this court, for the purpose of the exception, is not the only construction that could be given as to the purposes of the ordinance. Courts have much more latitude in construing or applying statutes or ordinances, in determining their scope and operation, their object and purpose, and the mischief which they are intended to prevent, than they have in "interpreting" such statutes or ordinances, that is, in ascertaining the meaning of the language used by the legislature.

Intersecting streets in cities are usually congested areas. Pedestrians often cross above or below intersections, knowing that drivers of automobiles are required to operate their machines at a slower speed. This court in *Moye* v. *Reddick*, supra, in a somewhat similar situation (although the wording of the statute there in question is slightly different from the one in this case) evidently construed the duty of obeying the ordinance to be intended for the benefit of any person using the street upon which a violation of the ordinance might reasonably operate. Therefore, if this construction be true (by which, without nicety of judicial distinction, this court would possibly be bound), the plaintiff certainly had the right to invoke the duty as to himself.

In another ground of the motion for a new trial complaint is made that "after the evidence had closed and prior to argument to the jury, counsel for the plaintiff read to the court from a number of cases in presenting their contentions as to the applicable law on various questions arising in the case. Among other cases was *Perry* v. *Macon Con. St. Ry. Co.,* 101 *Ga.* 400 (29 S. E. 304), from which counsel for the defendant read the headnote, and counsel for the plaintiff, in his presentation of the law to the court, read the facts, contending that the facts were necessary to an understanding of the principle of law laid down in that case. Later on, and while the plaintiff's attorney was making his argument to the court, he read in the presence and hearing of the jury the facts set out in the report of the case of *Western Atlantic R. Co.* v. *Young,* 83 *Ga.* 512 (10 S. E. 197), wherein a verdict for $13,750 had been rendered in

favor of a boy of the age of the plaintiff in this case, for personal injuries, and when he read the amount of the verdict he turned to the jury, saying: "This child received $13,000," repeating the expression about $13,000 more than once. It further appears from this ground that objection was made by the defendant's counsel to the reading of such facts, and the sole ruling of the trial judge was, "Of course, the facts in some other cases have no bearing on this case." Quoting further from this ground: "Further on in his argument to the court the attorney for the plaintiff read in the presence and hearing of the jury from the report of the case of *Rosenberg* v. *West,* reported in 44 *Ga. App.* 211, and stated the fact that the plaintiff in that case 'sued for $40,000 and received $8,700.' (That case was a local case in which personal injuries were sued for.)" It appears that the defendant's counsel objected to the reading of the facts in said case and the court said: "The facts in other cases have no bearing on this case. I will permit him to read the law and he can base the law on the facts and state that to me, I will let him do that, but, of course, the facts in some other case have no bearing on this case." It further appears that later on in his argument to the court, in the presence of the jury, counsel for the plaintiff again commented upon and referred to the *Rosenberg* case, and that counsel for the defendant again objected to such action and moved the court to grant a mistrial because of such action, and that the court ruled: "I overrule the motion for mistrial, and instruct the jury that the facts in the *Rosenberg* v. *West* case have nothing to do with this case. You are to be governed only by the facts in this case. The law, however, counsel has a right to read to the court, and the court will subsequently instruct the jury as to his opinion of the law." The practice here indulged in was highly improper. It has been held highly improper practice to read to the jury facts of other cases decided by our courts of last resort. *Mays* v. *Mays,* 153 *Ga.* 835 (113 S. E. 154) ; *Central of Georgia Ry. Co.* v. *Hardin,* 114 *Ga.* 548 (40 S. E. 738) ; *Hudson* v. *Hudson,* 90 *Ga.* 581 (16 S. E. 349) ; *Georgia Land & Securities Co.* v. *Chapman,* 25 *Ga. App.* 185 (103 S. E. 414). See also the language of the Supreme Court in *Southern Ry. Co.* v. *Ray,* 155 *Ga.* 579 (118 S. E. 53), as follows: "Another ground of complaint was that the court erred in allowing the plaintiff's counsel, while arguing the case before the court and jury, *to read to the court in*

*the hearing of the jury* (italics ours) certain extracts from other personal-injury cases where there were large recoveries and the cases affirmed by the Court of Appeals. Counsel for the defendant objected to the reading of these extracts in the hearing of the jury because they threw no light and were irrelevant to the law of the case, and were only read for the purpose of calling the jury's attention to the large verdicts rendered. No motion for a mistrial was made, but defendant's counsel moved the court to retire the jury while plaintiff's counsel read the extracts from the decisions. This motion the court overruled and allowed plaintiff's counsel to read the said extracts in the hearing of the jury. The Court of Appeals held that this action did not require the grant of a new trial, because there was no motion for a mistrial. The judgment of the Court of Appeals in this respect was not erroneous, and undoubtedly is sustained by the authorities quoted. *We deem it appropriate to condemn the practice. Whether there is a motion for mistrial or not, it is better policy for the trial judge to refuse to allow arguments to be made to the jury consisting of fac's not embraced in the record."* (Italics ours.)

A motion for a mistrial being made in this case and the action of counsel for plaintiff being extremely prejudicial and harmful to the defendant, the court should have granted the motion; and for failure to do so this court must award the defendant a new trial. This court and the Supreme Court have visited with disapproval, in many cases, to the extent of awarding a new trial, the bringing, by counsel at the bar, of irrelevant and extrinsic facts into the case by argument which could be made for no other purpose than to prejudice the jury. Among these are the well considered cases of *Berry* v. *State,* 10 *Ga.* 511, and *Mitchum* v. *State,* 11 *Ga.* 615. See also *Pelham & Havana R. Co.* v. *Elliott,* 11 *Ga. App.* 621 (75 S. E. 1062) ; *Morris* v. *Maddox,* 97 *Ga.* 575 (25 S. E. 487) ; *Southern Ry. Co.* v. *Gentle,* 36 *Ga. App.* 11 (135 S. E. 105) ; *Augusta & Summerville R. Co.* v. *Randall,* 85 *Ga.* 297 (11 S. E. 706) ; *Western & Atlantic R. Co.* v. *Cox,* 115 *Ga.* 715 (42 S. E. 74) ; *Smith* v. *Rothschild,* 13 *Ga. App.* 293 (79 S. E. 88).

The particular facts of the occurrence here under investigation, make us less reluctant to grant a new trial. The rulings of the court were in no sense a rebuke of counsel for the plaintiff, but were an implied license to him to continue an act many times dis-

approved by the courts and which must have seemed obviously improper. Counsel's repeated remarks with reference to the case read, that "that child received $13,000," and made while turned to the jury, were especially harmful and prejudicial. Certainly the fact that that child had recovered $13,000 could not aid the jury in the case at bar and probably did prejudice them. "Supreme Court decisions can not be read to the jury in civil cases to enlighten them upon the law. This they must take from the trial judge as their sole oracle, and it can not be seriously contended that what is said in the opinions of this court can or should aid the jury in solving questions of fact, it being their duty in every instance to return a true verdict according to the evidence." *Hudson* v. *Hudson,* supra. We therefore think a new trial should be granted on this ground alone.

4. In the ground 18 A of the motion for a new trial exceptions are taken to the following charge of the court: "I charge you on this question, that before the defendant, Huckabee, or the operator of any automobile, such as [in] this case, could claim exemption from liability for injury and damage by reason of the sudden appearance of a child on the street, it must first appear that the operator of the machine had been guilty of no pre-existing negligence which contributed to the injury and made it impossible to avoid the injury after seeing the child; thus, if one is running his automobile at a speed in excess of the statutory limit or the ordinance requirement of a city, or not keeping a proper lookout, or fails to reduce speed at crossings of highways, he can not escape liability because the child ran in front of the automobile so suddenly that the injury was then unavoidable." The court had just charged that if the plaintiff, by the use of ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. He had then charged that "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." The charge first above quoted is subject to the criticism that it is not a proper and correct statement of the law. A child of tender years may not be under the duty of exercising ordinary care as defined in the Civil Code, but he is charged with the duty of exercising such care as his capacity, mental and physical, fits him for exercising, this capacity to be

judged by the jury from the circumstances surrounding the transaction under investigation, and the child's conduct in reference thereto. Necessarily it was for the jury to determine in the present case what due care required of the plaintiff, a child eight years of age, at the time of the injury, and if they should find that he was of the age capable of exercising some degree of care, under the law he is bound to that extent, and it was error to charge the jury that if the defendant was violating the ordinance with reference to speed to such an extent that it became impossible to avoid the injury after the discovery of the child's presence, he could not avoid liability even though the child may have been capable of exercising a sufficient degree of care to have avoided the consequences of the defendant's negligence.

5. Quite a number of the grounds of the motion for a new trial are exceptions to the charge of the court on the grounds that they are argumentative and unduly invade the province of the jury. Upon investigation we find that some of these portions of the charge are somewhat subject to the criticisms made. It can not be too strenuously urged upon trial judges that they so frame abstract principles of law that they be given in charge to the jury in such a manner as not to be argumentative for either side of the case, and further not to encroach upon the province of the jury by telling them what may or may not constitute negligence, unless it is so declared by law. Principles of law correctly stated in decisions and text-books are not necessarily, under the practice prevailing in our State, fit to be given verbatim in charge to the jury. The learned judges and text-book writers do not contemplate, in discussing cases and laying down principles of law, that their language is to be given in a charge of the court to the jury. Such anticipation would be highly impracticable in appellate-court work. We are returning the case upon other grounds to the court below for another trial, and, therefore, do not deem it necessary to discuss these grounds at length, for we do not consider them so harmful as in themselves to work a reversal of the judgment, but we content ourselves with what is said above.

In ground 34 of the motion for a new trial exception is taken to the following charge of the court: "With reference to the charge of negligence made against defendant in paragraph 16-e of the plaintiff's petition, to the effect that the defendant

did not reduce his speed at the crossing or intersection of said high-ways *as required by the laws of Georgia* [italics ours] I charge you, as a matter of law, that the laws of Georgia raised a duty on the part of the defendant, so far as concerns this case, to reduce his speed at the crossing or intersection therein referred to, and, if the defend-ant failed to reduce his speed at said crossing, it would be an act of negligence on his part, if it was a violation of the *law of the State of Georgia* [italics ours], that is, the law specifying the speed, *and the law does specify that the speed be reduced to ten miles per hour."* (Italics ours.) Exceptions are taken to the last italicized part of the quoted charge as an erroneous statement as to the law, in that the laws of the State of Georgia do not require that the speed of an automobile be reduced to ten miles per hour at crossings and intersections. A note of the judge is attached to this ground, to the effect that in charging the last quoted part of this charge, he had in mind the ordinance of the City of Albany, which made the re-quirement as charged, and that that was the law under discussion at the time. We do not consider this note to be a qualification or disapproval of the recitals in this ground, but consider it an ex-planation on the part of the trial judge as to his intent and mean-ing in charging that speed should be reduced to ten miles per hour at intersections. Although we have the utmost confidence that the learned trial judge did intend this sentence to have reference to the requirements of the ordinance and not to the State law, on re-ferring to the charge we can not agree that it conveyed this mean-ing to the jury. It appears that in the paragraph immediately next preceding the one above quoted, the judge did charge with reference to the ordinance of the City of Albany which required a reduction of speed to ten miles per hour of automobiles at crossings and intersections. He then gave in charge to the jury the para-graph above quoted concerning the laws of the State of Georgia, and immediately in connection therewith, and without a break in the continuity of subject-matter, he charged, "that is, the law specify-ing the speed, and the law does specify that the speed be reduced to ten miles per hour." This could have conveyed to the jury no other impression than that the laws of the State of Georgia required a reduction of speed by automobiles at crossings and intersections to ten miles per hour. In the recent case of *Pybus* v. *Goldstein,* 45 *Ga. App.* 669 (165 S. E. 866), it was said: "As the law did not

require drivers of these automobiles to slow down to a rate of speed not exceeding ten miles an hour at street crossings, it was not error to refuse a request so to charge. Ga. L. 1927, p. 226." We therefore are of the opinion that the charge here excepted to was erroneous.

The case is being returned for another trial for errors committed as set out in the foregoing opinion, and no ruling is made with reference to the general grounds.

*Judgment reversed. Guerry, J., concurs.*

BROYLES, C. J. I concur in all the rulings in the decision except that made in headnote 6. In my opinion the judge did not err in refusing to give the requested charge set out therein, as he had sufficiently covered the principle of law embodied in the request, by stating in his general charge that if both plaintiff and defendant were equally negligent, the jury should find for the defendant. The case of *Ga. & Fla. Ry.* v. *Newton,* 140 *Ga.* 463, does not support the ruling stated by the majority of this court in headnote 6.