31079. SOUTHERN RAILWAY COMPANY *v.* BRACKETT.

DECIDED MARCH 15, 1946. REHEARING DENIED MARCH 29, 1946.

*R. Carter Pittman,* for plaintiff in error.
*I. C. Adams,* contra.

MacIntyre, J. 1. The movant specifies as erroneous the following charge—"I charge you, gentlemen, in that connection, if you find that Pease was not the operator of the train, yet he owed to the plaintiff due care, such as an ordinary prudent person would have exercised under similar circumstances when he discovered her peril, if he did discover her peril, and as to whether or not he exercised due care for the safety of the plaintiff in this case, is purely a question for your determination, and you will be governed in deciding that question, gentlemen, by determining what an ordinarily prudent person would have done for the protection of the plaintiff under the same or similar circumstances"—on the grounds that: "(a) said instruction was unsupported by the evidence; (b) it was confusing to the jury; (c) it was misleading to the jury; (d) it authorized the jury to predicate its verdict against movant upon the conduct of movant's station agent, who at such time and place breached no duty owing to the plaintiff; (e) it submitted to the jury an issue not raised by the evidence; (f) it authorized a recovery for failure to direct and employ a signalling device not designed for use in protecting crossings and the use of which was for train orders only."

If the defendant wished an elaboration on the charge, it should have requested it. The exercise of due care is required of a railroad company acting through its employees and agents to avoid injuring a person crossing the tracks of such company at a public crossing; and it is likewise the duty of the person crossing a railroad track at a public crossing to use ordinary care to avoid injury. The fact that it was the duty of Pease, the employee and agent of the railroad company, to operate the semaphore which was installed to signal train orders, etc., does not signify that Pease, the employee and agent of the railroad company, could allow a train to injure a person crossing the tracks at a public crossing, if he could, as the agent of the company, have avoided it by the use of due care in the use of the semaphore or any other available means, even though it was not his specific duty to use the semaphore to avoid injuries to persons crossing the tracks at the public crossing in question. 3 Blashfield's Cyclopedia of Automobile Law and Practice, 333 (30).

.The defendant relies very strongly upon the cases of *Central of Georgia Railway Company* v. *Griffin,* 35 *Ga. App.* 161 (132 S. E.

255), and *Huckabee* v. *Grace,* 48 *Ga. App.* 621 (173 S. E. 744). The *Griffin* case was based upon a statutory duty, and it was there held that, if the injured person was not one upon whom the duty prescribed by the statute could operate, of course no statute had been violated. And in the *Huckabee* case this court quoted with approval the following: " 'To constitute an act of omission the foundation of an action of law, it must appear that a duty was due by the actor to the person claiming to have been injured by the act. The rule of reasonable care *necessarily* includes *two persons* or one person and some right or property of another. It is a rule of relation. If there is no relation, there is nothing upon which the rule can operate. The rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated. But as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island, and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them. Unless and until one is brought into relation with other men, or property, or rights, he has no obligation to act with reference to them, and this is true whether the obligation be called legal, moral, or reasonable.' " And so in this case, if Pease had been in the depot and operated the semaphore from his office, and had not seen the plaintiff approaching the railroad tracks under the circumstances stated, and had operated the semaphore without reference to the plaintiff crossing the railroad tracks at a frequently used public crossing, the rule of reasonable or ordinary care could not have limited the conduct of Pease as he was then situated, just as "the rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated." The plaintiff does not contend that Pease should keep a regular or permanent watchout for persons crossing at the public crossing in question.

In the operation of the semaphore, Pease's duty was not general in the sense that he owed a duty to everybody who passed over the public crossing to slow up or stop the train in order to let them pass or to avoid a collision. But in the instant case the jury could have found that Pease did not owe the plaintiff any duty under any statute or any specific rule of the railroad com-

pany which related to the operation of the semaphore or that he did not owe the plaintiff any duty under any specific rule of the railroad company; but that he did, as an employee of the railroad company, under the general principle of the common law, owe her a duty, by reason of her peculiar position under the stated circumstances, not to stand by and fail to use the available means which if used in the exercise of due care would have prevented the injury. Of course a railroad company can act only through its agents. In *Pollard* v. *Weeks*, 60 *Ga. App.* 664, 672 (4 S. E. 2d, 722), cited by the defendant in its motion for a rehearing, it is stated that "whether or not an emergency exists, is a question for the jury;" and here the jury have passed on this question adversely to the defendant.

With reference to the proposition that Pease warned or attempted to warn the plaintiff at the crossing, that the plaintiff had failed to heed the warning, and that this failure was itself the cause and convicted the plaintiff of contributory negligence— it is sufficient to say that the undisputed proof by Pease himself is that the defendant in error, as she started over the crossing, did not hear him or did not appear to see the signals which he was making to try and convey to her the approach of the oncoming train. Thus this proposition cannot be sustained. Baker *v.* Hodges (Tex. Civ. App.) 231 S. W. 844. Under his charge, the judge left it to the jury to say whether it was negligence of the agents of the railroad company to use the means at hand in an effort to avoid injuring the plaintiff on a frequently used railroad crossing. We do not think that the judge committed reversible error for the reasons urged. Baker *v.* Hodges, supra; 3 Blashfield's Cyc., 84, 85, § 1710.

2. " 'A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration.' " *Reaves* v. *Columbus Electric &c. Co.,* 32 *Ga. App.* 140, 151 (122 S. E. 824). Relative to the contention that the contributory negligence of the plaintiff was the cause of the injury—taking that view of the evidence most favorable to upholding the verdict, for every presumption and every inference is in its favor, the jury were authorized

to find that the plaintiff had arrived in a position of peril before she became cognizant of the approaching, onrushing train, by reason of obstructions in the nature of bushes, undergrowth, etc., which cut off her view of the railroad track in the direction from which the train approached her, and by reason of the fact that the train approaching her on the crossing could not be seen from the crossing at the proper place to look for an approaching train until it had "rounded" the curve a quarter of a mile distant from the crossing; and that on the occasion in question the train was running sixty miles per hour as it rounded the curve, and continued so to run until it struck the plaintiff at the frequently traveled public crossing in an unincorporated village; and further authorized to find that under the running of the train at such a speed it would have taken only fifteen seconds for the train to have traveled from the curve where the plaintiff could have first seen it to the crossing where it struck her; and to find that, even if her hearing was "impaired," yet, she took extraordinary care by approaching the crossing at a very slow rate of speed of about ten miles per hour, and looked in both directions at the proper distance under the circumstances before she crossed the track. *Beckworth* v. *State,* 60 *Ga. App.* 688 (4 S. E. 2d, 707).

This case is differentiated on the facts from *Richardson* v. *Pollard,* 57 *Ga. App.* 777 (196 S. E. 199), and the cases cited, and from *Southern Ry. Co.* v. *Jay,* 137 *Ga.* 60 (2b) (72 S. E. 503). See 38 Am. Jur. 895. This case is also different from *Kirk* v. *Savannah Electric &c. Co.,* 50 *Ga. App.* 468 (178 S. E. 470), and cit., and *Thomas* v. *Central of Georgia Ry. Co.,* 121 *Ga.* 38 (48 S. E. 683), cited by the plaintiff in error in his brief. In these last two cases a deliberate attempt to cross ahead of an approaching train in plain sight, based on the motorist's personal calculations as to the respective speed and distance of the train and the plaintiff's own automobile, cast on the driver the risk of the attempt, which responsibility he could not escape because of his erroneous estimate of the chances. 3 Blashfield's Cyc., 228 (71) § 1818. Where, by some reason or cause not attributable to negligence on the part of a motorist, he has arrived at a position of peril before he becomes cognizant of the approach of an onrushing train, and in an effort to escape injury in the emergency which confronts him, he attempts to cross over the crossing, where

he is struck by the train, the usual condemnation of crossing in front of an oncoming train as negligence as a matter of law has no application. 3 Blashfield's Cyc. 228 (71), § 1818.

Relative to the negligence of the railroad company—under the above rules, and taking that view of the evidence most favorable to the upholding of the verdict the jury were authorized to find that, when Pease pulled the semaphore signal switch, the train was just rounding the curve a quarter of a mile away; that he immediately cut his eyes around and saw the plaintiff approaching the public crossing; that he knew her hearing was impaired and knew of the obstruction which prevented her from seeing the approaching train until she was almost upon the railroad track; that he knew the approximate speed was about fifty-five or sixty miles per hour, and that it was customary for the train to travel at this rate when traveling over the crossing, if there was no order by the semaphore to either slow down or stop; that under the engineer's testimony, his schedule called for such a speed at the place where the injury occurred that it would take about 15 seconds to reach the crossing from the curve, the plaintiff's view being obstructed until she was approximately eight feet from the crossing; that a signal by Pease, the station agent using the semaphore, to slow down or stop the train would have prevented the injury; that if the station agent, having had time to go from the depot to the public crossing in an endeavor to wave the plaintiff down, instead of so doing, had used the semaphore to slow down or stop the train, the collision would not have occurred; that even a signal to slow down would in all probability have prevented the injury, as the train would have crossed the public crossing just a few seconds later than it did, and would not have struck the automobile and injured the plaintiff; and that the automobile had almost cleared the track as it was struck by the train at a point on the left rear fender where gas is put in the tank. Thus we think that the rule in *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759 (153 S. E. 718), which has been many times announced, that questions as to diligence and negligence, including contributory negligence, and what negligence constitutes the proximate cause of the injury complained of, was applicable to the instant case.

3. The evidence authorized the verdict and the judge did not err in refusing the motion for a new trial.

There being a dissent in the division of this court to which this case was originally assigned, the case was considered and decided by the court as a whole, pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L., 1945, p. 232).

*Judgment affirmed. Gardner and Parker, JJ., concur. Sutton, P. J., concurs in the judgment.*

BROYLES, C. J., dissenting. In my opinion the excerpt from the charge assigned as error in the special ground of the motion for a new trial was not authorized by any evidence in the case, was misleading and confusing to the jury, and prejudicial to the defendant company, and requires another hearing of the case.

FELTON, J., dissenting. Paragraph 28 of the petition alleged: "Jim Pease, the agent of defendant in charge of said railroad station, from his vantage point in his office on the west side of said crossing and near the same, saw the train and the plaintiff before she had reached the crossing, and before she could have seen said train due to said obstructions, and he negligently changed the signal board, permitting the train to pass by said station without stopping, thus striking the plaintiff at said crossing." Paragraph 28 (D) alleged: "After said Jim Pease saw the plaintiff and said train approaching said crossing as aforesaid, he owed the plaintiff the duty as a matter of fact not to change the said signal board and permit the said train to pass by same and hit her at said crossing, and his failure as such was negligence." Paragraph 28 (I) alleged: "At the time said agent changed said signal board, the said train was several hundred feet south of the same, and if said stop signal had remained in effect, the said engineer could have slowed said train sufficiently for plaintiff to pass over said crossing before said engine reached same, thus avoiding striking her said automobile."

Whether or not, under other circumstances, a railroad station agent's failure to prevent a crossing accident would charge the railroad with liability, it certainly does not do so in this case. The duty to exercise ordinary care does not require one to be a prophet, and that is what the agent was in this case. When he pulled the signal, the plaintiff was in no danger whatever, and he had a perfect right to rely on the engineer of the train to do his duty, and to rely on the plaintiff to exercise ordinary care for her own safety. In anticipation of a danger which did not exist at the time, the

agent hurried to the crossing to prevent an imaginary collision. It so happened that his prophesy was true, and his effort to prevent the collision was in vain. Instead of being charged with negligence, the agent should be commended for extraordinary foresight and humanitarian impulse. Furthermore, even if changing the signal would have been more effective than the course the agent pursued, which I seriously doubt, under the facts, his decision to try to stop an automobile which was running in low gear, rather than a heavy train running at a high rate of speed, cannot be said to be negligence. Of course, whether the railroad might have been liable because of other alleged acts of negligence, is another question which is not for discussion under the exception in this case. I think the court erred in authorizing the jury to find for the plaintiff by reason of any negligence of the station agent.