48287. CENTRAL OF GEORGIA RAILROAD COMPANY v. SELLERS et al.

ARGUED JUNE 28, 1973 — DECIDED SEPTEMBER 14, 1973 — REHEARING DENIED OCTOBER 5, 1973 —

*Coleman, Blackburn, Kitchens & Bright, J. Converse Bright,* for

appellant.

*Cullen M. Ward, Frank M. Eldridge, Knight & Perry, W. D. Knight,* for appellees.

STOLZ, Judge. ■ Enumerations of error 1, 2 and 3 are without merit.

■ Enumerations of error 4 and 6 are without merit.

■ It was not error to admit in evidence a photograph of the deceased with her husband which was taken a year or two prior to her death where the same is shown to be a true and correct likeness of the deceased. It is relevant to show health, age, physical condition, and general appearance, all of which facts having bearing on life expectancy. *American Oil Co. v. McCluskey,* 119 Ga. App. 475, 480 (167 SE2d 711) and cits.; *Trammell v. Matthews,* 86 Ga. App. 661, 671 (72 SE2d 132) and cits.

■ Defendant's enumerations of error 7 and 8 address themselves to the trial court's allowing plaintiff's counsel to read in the presence of the jury, excerpts from the decisions of appellate courts of this state and in overruling the defendant's objections to such under the guise of reading law to the court.

At the commencement of the plaintiff's opening argument, counsel announced that he wanted to call the court's attention to "about four cases." Defense counsel interposed an objection and noted that, under the rules of law, requests to charge must be in writing. The court overruled the defendant's objection.

Plaintiff's counsel then cited the case of *Southern R. Co. v. Dilbeck,* 122 Ga. App. 214 (176 SE2d 715). Plaintiff's counsel then stated, "Now, there has been a big discussion here about—a particular railroad lawyer —about going to other accidents — and here's what the court said in that case," and then read from the case at page 217. Plaintiff's counsel then called the court's attention to *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665 (88 SE2d 6), and read from the case at page 667. Plaintiff's counsel then stated, "Now, may it please the court, the evidence in this case is that the engineer saw the object, and whether it be a car or truck, he didn't know at the time — 500 feet back on highway 135 — that he kept his eye on the object — and then, he saw it was a car and saw he was in trouble." Defense counsel's objection to the argument of appellate court decisions to the jury was overruled.

Plaintiff's counsel then cited *Seaboard C. L. R. Co. v. Wallace,* 123 Ga. App. 490 (181 SE2d 542), and stated, "the facts fit this case just exactly like the glove fits the hand," and then quoted the charge from Headnote 3. Thereafter, plaintiff's counsel stated,

"that's No. 1 — it said in that case. The engineer said he knew — he saw it, he knew the situation and realized, or had reason to realize that the plaintiff was inattentive; and, therefore, unlikely to discover his peril — in this case, her peril, in time to avoid the harm, see the very thing, and therefore, is negligent in his failure to utilize with reasonable care his competence and then existing ability to avoid harm to the plaintiff. And, in this case, by the admission of the plaintiff, she got hit on the crossing — that's by his own testimony. So, these facts are very, very similar. I say they all fit this case exactly." Subsequently, plaintiff's counsel cited *Seaboard C. L. R. Co. v. Harris,* 124 Ga. App. 126 (182 SE2d 915), and stated, "Now, this case right here dealt with another phase of our case — except, in this case, it was at the southwest quadrant at which there was a thicket of trees and underbrush. In this case, I believe it's the southeast — I call it the righthand side of the highway." Counsel then cited Code §§ 94-503 and 94-504.

"[L]anguage used by this court and the Supreme Court, while appropriate in a headnote or opinion, may be improper when embodied in a charge." *Fitzpatrick v. Jim Clay Ford, Inc.,* 126 Ga. App. 58, 59 (189 SE2d 876) and citations. "Even though language used by the appellate courts in a decision may embody sound law, it is not always appropriate to employ such language in instructing the jury." *Stull v. State,* 230 Ga. 99, 104 (196 SE2d 7). The above rule applies to counsel as well as the trial judges.

"In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court *written requests* that it instruct the jury on the law as set forth therein. Copies of requests shall be given to opposing counsel for their consideration prior to the charge of the court. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but shall instruct the jury after the arguments are completed. The trial judge shall file with the clerk all requests submitted to him, whether given in charge or not." (Emphasis supplied.) Code Ann. § 70-207 (b) (Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078).

". . . [T]he jury in all criminal cases, shall be the judges of the law and the facts." Ga. Constitution of 1945, Art. I, Sec. II, Par. I (Code Ann. § 2-201); Code § 27-2301 (Cobb, 835). In civil cases the trial judge is the judge of the law and the jury the judge of the facts. *Higgins v. Trentham,* 186 Ga. 264, 269 (197 SE 862) and cits. Thus, different rules apply to civil and to criminal cases.

In *Douglass v. Boynton,* 59 Ga. 283, 285, it appeared that ". . .

plaintiff's counsel, on the argument of the case before the jury, proposed to read to them . . . [a case], which the court refused to allow him to do, but told him he could read it to the court in the hearing of the jury, if he desired to do so. There was no error in the refusal of the court to allow the case . . . to be read to the jury, in view of the provisions of the 3d common law rule of practice in the superior courts, which declares that, 'In all civil cases, questions of law shall be argued exclusively to the court, and questions of fact to the jury.' " Among the authorities supporting this interpretation of the rule are: *Rutledge v. Hudson,* 80 Ga. 266, 267 (5 SE 93); *Rome R. Co. v. Barnett,* 94 Ga. 446, 447 (20 SE 355); *Central of Ga. R. Co. v. Hardin,* 114 Ga. 548 (5) (40 SE 738); *Slaughter v. Heath,* 127 Ga. 747, 748 (57 SE 69).

A contrary view is expressed in *Hudson v. Hudson,* 90 Ga. 581, 587 (16 SE 349), an opinion by Mr. Justice Lumpkin, in which the court ruled, "Supreme Court decisions cannot be read to the jury in civil cases to enlighten them upon the law. This they must take from the trial judge as their sole oracle, and it cannot be seriously contended that what is said in the opinions of this court can or should aid the jury in solving questions of fact, it being their duty in every instance to return a true verdict according to the *evidence.*" In *Glover v. State,* 15 Ga. App. 44, 52 (82 SE 602), this court noted, "On the trial of civil cases, decisions of courts of last resort, and especially comments contained therein upon the facts of cases, should not be read by counsel to the jury. 'Such a practice can not aid the jury in ascertaining the law applicable, for this they must take from the court; nor in arriving at the truth of the case on the facts, for this they must get from the evidence.' " See also *Mays v. Mays,* 153 Ga. 835, 836 (113 SE 154); *Southern R. Co. v. Ray,* 155 Ga. 579, 582 (118 SE 53). In *Georgia Land &c. Co. v. Chapman,* 25 Ga. App. 185 (3) (103 SE 414), this court held it to be error to allow the defense counsel, over objection, "to read to the jury a case from the Georgia Reports, and to argue, in effect, that the decision of the Supreme Court in that case, under the facts of both cases, was controlling as to a vital issue in the case being tried." See also the discussion in *Huckabee v. Grace,* 48 Ga. App. 621, 634-637 (173 SE 744).

There is no logical difference between reading law to the jury and reading law to the court in the presence of the jury. These two provisions of our law must be construed in pari materia. In the past it could be fairly argued, that in reading the law to the court at the commencement of the argument (in the presence of the jury),

counsel was informing the court of the authorities he was relying on and thus assist the court in the preparation of its charge to the jury. See *Averett v. Brady,* 20 Ga. 523 (2).

Whatever may have been the justification for the practice in the past ended with the enactment of Code Ann. § 70-207 (b), supra. Under this latter Code section not only must counsel submit requests to charge at or before the close of the evidence, but the court must inform counsel of its proposed action on the requests prior to counsel's argument to the jury. What then is the purpose of reading "law to the court" in the presence of the jury?

This writer frequently engaged in the practice complained of as a member of the trial bar. At this point in his judicial tenure, he is not so far removed therefrom as to have forgotten the reasons for its use. "The object of all legal investigation is the discovery of the truth." Code § 38-101. The trial of a lawsuit should be as far removed as possible from the appearance of gamesmanship. The practice complained of here is condemned. In all civil cases the jury shall receive the law *exclusively* from the trial judge and any departure from this rule will constitute reversible error.

Nothing herein should be construed as applying to arguments made to the trial court in support of or in opposition to rulings on evidentiary matters in the course of a trial as such is not before us at this time and is specifically not passed upon.

■ Defendant enumerates as error the trial court's charging the jury as follows: "I charge you, ladies and gentlemen of the jury, that there is no statutory law of Georgia which requires the operator of a motor vehicle to listen or to stop before going upon a railroad crossing, unless there is a clearly visible electrical or mechanical signaling device giving warning of the immediate approach of a train, or if there is a crossing gate lowered, or if there is a human flagman giving a signal of the approach or the passage of a train, or if an approaching train is plainly visible and is in hazardous proximity to the crossing."

The foregoing charge is essentially Code Ann. § 68-1661 (Ga. L. 1953, Nov. Sess., pp. 556, 593). The provisions of this statute must be construed with the provisions of Code Ann. § 68-1662 (Ga. L. 1953, Nov. Sess., pp. 556, 594), which states: "The State Highway Board and local authorities with the approval of the State Highway Board are hereby authorized to designate particularly dangerous highway crossings of railroads and to erect stop signs thereat. When such stop signs are erected the driver of any vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail

of such railroad and shall proceed only upon exercising due care."

The two aforesaid statutes must likewise be applied to the facts in the case. Here, the uncontroverted evidence is that the collision which caused the death of Mrs. Sellers occurred at a railroad crossing of Georgia Highway 135 in Berrien County; that Mrs. Sellers was driving north on said highway; that there was a red "stop" sign with white letters at the crossing which was clearly visible for 600 feet to 700 yards, and also a black and white sign with the words "railroad crossing" behind and above the "stop" sign. There were no electrical or mechanical signaling devices at the crossing giving warning of the approach of the train, nor was there a flagman. Mrs. Sellers seemingly was unable to stop or turn her car as she approached the crossing. The Sellers' car knocked down the aforesaid two signs at the crossing as the vehicle she was driving slid toward the tracks and into the path of the oncoming train.

The provisions of Code Ann. § 68-1661 (a, b), supra, are obviously inapplicable to the facts in this case. Subsection (c) is clearly applicable and favorable to the defendant. The giving of the entire Code section was not error where part was applicable. *Highland v. State,* 127 Ga. App. 518, 519 (194 SE2d 332).

■ Enumerations of error 13 and 14 complain of the trial judge's giving plaintiff's request to charge No. 10 to the jury. After completion of the charge, the defendant made proper exception thereto and cited authority for its position. Whereupon, the court correctly recalled the jury to the jury box, called attention to the charge complained of, then specifically instructed the jury to disregard the charge, and withdrew it from the jury's consideration. Consequently, the aforesaid enumerations of error are not meritorious.

■ Enumerations of error 13 and 14 are without merit.

■ Enumerations of error 15 and 16 complain of the trial court's failure to grant the defendant's motions for directed verdict made at the close of the plaintiff's evidence and at the close of all evidence. Enumeration 17 complains of the trial court's refusal to grant the defendant's motion for judgment notwithstanding the verdict. These three enumerations of error will be treated together.

In passing on these motions we must review the evidence and construe it most favorably toward sustaining the judgment. *Richardson v. Barrett,* 90 Ga. App. 714 (2) (84 SE2d 120). Directed verdicts can be granted only when there "is no conflict in the evidence as to any material issue and all the evidence introduced,

with all reasonable deductions therefrom, shall demand a particular verdict." Code Ann. § 81A-150 (a) (Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248).

The collision occurred at the intersection of the defendant's track and Georgia Highway 135 in Berrien County, Georgia. Defendant's train was proceeding west; Mrs. Sellers was driving north. The train's engineer, sitting on the left side of the engine, first saw the Sellers' automobile through the trees when it was 500 feet from the crossing, but it was 250 feet from the crossing when it came into plain view. The engineer testified that he continuously watched the Sellers' automobile; that, when the automobile was about 200 feet from the crossing, the "car was waving like it may be putting on brakes"; that the automobile was sort of "fish tailing"; that he thought it was going to stop — looked like it was under control — "and then, it looked like it might be getting out of control, you know?"; that, when he saw the automobile "doing this," he did not think the automobile was about to get in trouble and thought that it was going to stop. Arthur Brown, a witness called by the defendant, testified that he was driving a tractor-trailer loaded with lumber south on Georgia Highway 135 approaching the aforesaid crossing when he witnessed the collision between the Sellers' automobile and the defendant's train. On direct examination the witness testified as follows: "Well, to begin with — what caused me to look for the train was the car. I noticed the front end of the car — as if you applied the brakes — it dipped. So, that caused me then to look for the train. At the same time, I looked up the track and saw the train and the train started blowing; and, this car did this about three times — before it got to the point where it seemed like it decided it wasn't going to be able to stop; and, it attempted to turn; and that's when it went into a skid and hit this sign and backed across the track right in front of the train." Later, still on direct examination, Mr. Brown testified: "To begin with — the first thing I saw was the front end dipped like that (indicating) — it dropped — as they applied the brakes it pulled to one side. In just a few seconds it did it again — the same way. In fact, it did it around three times — before he could decide — and that's when he went into the skid — and turned completely around."

On cross examination of the witness Brown the following appears in the record: "Q. You could tell this car was in trouble, couldn't you? A. Sure. Q. And when you saw this car acting up that made you start thinking something was going to happen, didn't it? A.

Something was happening — because the track was there in front of me — which — I hadn't even looked for the train beforehand. Q. That's when you began to look to see what was coming? A. That's right. And in the meantime the whistle started blowing. Q. And if you hadn't seen this car acting up what might have happened to you? A. I could have been down there on the track."

Evidence showed that the collision occurred on August 12, 1970, at approximately 6:30 p. m. At the time, it was not raining, but the highway was wet from a previous rain. The defendant's train was traveling 25 miles per hour; the Sellers' automobile 45-50 m. p. h. The highway over which the Sellers' vehicle traveled was paved and divided into two lanes for vehicular traffic. Approximately 30 feet south of the crossing there was a dirt road that ran parallel to the railroad tracks. The defendant's engineer maintained the speed of the train at 25 m. p. h. until he saw the Sellers' automobile strike a "stop" sign approximately 25 feet from the crossing, at which time he applied the train's emergency braking system.

Under the facts presented by this case, a jury question is presented as to whether the defendant's engineer had the "last clear chance" of avoiding the collision with the Sellers' automobile. While the evidence conclusively shows that the train could not have been stopped prior to reaching the crossing by applying the emergency brakes when the Sellers' automobile first "came into plain view" of the engineer, the evidence does show that the train and the automobile met at the crossing at the same instant. Had the engineer slowed the train when it looked to him "like it was getting out of control there" (as he testified), it is entirely possible that the Sellers' automobile would have passed over the tracks without being struck by the train, construing the evidence most favorably to sustaining the judgment (*Richardson v. Barrett,* 90 Ga. App. 714 (2), supra), and against the movant on motion for directed verdict. *Curry v. Durden,* 103 Ga. App. 371 (1) (118 SE2d 871); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408). For a number of illustrations of the application of the doctrine of last clear chance by Georgia courts, see *Bennett Drug Stores, Inc. v. Mosely,* 67 Ga. App. 347, 349 (20 SE2d 208); *Lovett v. Sandersville R. Co.,* 72 Ga. App. 692, 695 (34 SE2d 664); *Ga. S. & F. R. Co. v. Haygood,* 103 Ga. App. 381, 385 (119 SE2d 277); *Seaboard C. L. R. Co. v. Wallace,* 123 Ga. App. 490, 491 (181 SE2d 542).

Defendants rely on *Joyce v. Ga. S. & F. R. Co.,* 122 Ga. App. 712 (178 SE2d 575), and *Seaboard C. L. R. Co. v. Sheffield,* 127 Ga. App.

580 (194 SE2d 484). Both are distinguishable. In *Joyce,* the plaintiff's deceased husband, by deliberate choice, attempted to beat the locomotive across the tracks. In the case sub judice, the evidence shows that Mrs. Sellers was attempting to stop the automobile she was driving some 200 feet from the crossing, but, for unknown reasons (but apparent brake failure) was unable to do so. In *Sheffield,* the plaintiff drove his automobile into the 30th car of a freight train as it was moving through a crossing. Certainly, as far as the train's engineer was concerned, there was no "last clear chance" to avoid that collision.

The trial court ruled correctly on the defendant's motions for directed verdict and judgment notwithstanding the verdict.

9. Defendant's enumeration of error 18 is directed to the trial court's failure to grant the defendant's motion for new trial. The grounds of the motion for new trial have been treated previously in this opinion.

*Judgment reversed. Eberhardt, P. J., concurs. Pannell, J., concurs specially.*

PANNELL, Judge, concurring specially. I concur in the judgment of reversal because of the actions of counsel, not because of his reading law to the court in the presence of the jury, which is permissible under the decisions cited, but because he argued and compared facts in the cases read to those in the case being tried. This is error, even though the remarks might be addressed to the trial judge, if made in the presence of the jury. I do not agree that the mere reading of the legal pronouncements in another case to the trial judge in the presence of the jury, as stated in the headnote and opinion, is the law, however desirable the majority might think such a ruling to be. The recent statutory enactment relating to requests to charge had nothing whatsoever to do with the question here involved and in no sense repealed or revoked or changed the law so as to nullify the previous decisions of this court. If a change in the law is deemed desirable, so as to prohibit the mere reading of law to the court in argument of the case, it should be done either by a statute of prohibition or by the overruling of the numerous court decisions permitting this to be done.