60388. STEPHEN W. BROWN RADIOLOGY ASSOCIATES v. GOWERS et al.

MCMURRAY, Presiding Judge.

In May, 1971, during the course of a routine physical examination, a nodule was discovered on Warren H. Gowers, Sr.'s prostate gland. He was hospitalized for a series of tests and for a biopsy and a diagnosis was made that he had carcinoma of the prostate. He was referred by a local doctor to a partnership of doctors (Doctors Brown, Brown, Crawley & Brizel) known as Stephen W. Brown Radiology Associates. He was then given radical radiation therapy by the partnership with the attending physician being Dr. Herbert E. Brizel, under whose supervision the radiation therapy was administered from June 24, 1971, until September 9, 1971. Dr. Arlie E. Fiveash, who later joined the Brown partnership, also assisted in the patient's care and treatment. This therapy was given at the Augusta Radiation Therapy Center, Inc. Gowers then received

additional radiation therapy treatment at Talmadge Hospital. His care and treatment continued until the Summer of 1975. During this time he experienced edema of the penis and scrotum but was advised by his doctors that this was a normal reaction although he would have certain discoloration of the skin.

Gowers contends that in late October or November, 1974, his penis and scrotum started extreme swelling which did not thereafter ever subside; that same permanently prevented sexual relations and that he eventually, on January 3, 1975, developed chills and fever, a condition not previously experienced; and he was admitted as a patient to receive antibiotic therapy. He was again hospitalized in May, 1975, for a recurrence of the January condition. He then sought independent medical advice concerning his problems and contacted a number of medical institutions. Gowers contends he learned for the first time that the injuries from which he was suffering were the result of the negligent acts of his radiation therapists.

On August 5, 1976, Gowers sued the referral doctor and Stephen W. Brown Radiology Associates, formerly known as Doctors Brown, Brown, Crawley & Brizel; Augusta Radiation Therapy Center, Inc.; and Varian Associates, Inc., the manufacturer of the radiation equipment. In Count 1 he sought damages against the medical defendants for the personal injuries arising out of the radiation damage to his body because they knew or should have known that this radical radiation therapy was not the treatment of choice for plaintiff's condition and that these defendants departed from that degree of skill and diligence required of them, seeking $1,000,000 (later amended to $1,700,000) damages for the radiation injuries which resulted in extreme physical and emotional distress, lost wages, medical expenses, and virtually unendurable agony.

Count 2 was virtually the same as Count 1, but against Augusta Radiation Therapy Center, Inc., its agents, servants and employees, in administering in a negligent manner the radiation therapy which contributed to his injuries.

Count 3, alleging the same averments, was against the manufacturer, contending it negligently manufactured and designed the linear accelerator which was utilized in the radiation therapy, thereby contributing to his injury.

Stephen W. Brown Radiology Associates answered, in general, denying the claim as well as a plea of the statute of limitation, alleging that the right of action set forth in the claim did not accrue within 2 years next before the commencement of the action. The answer admitted that Gowers experienced several injuries which were complications resulting from the radiation therapy.

The plaintiff contended the consequences of the radiation

injuries became apparent in November, 1974. These defendants contend it appeared as early as prior to July, 1972, years before the date of November, 1974, as alleged by the plaintiff.

In a pretrial statement, plaintiff Gowers set forth his contentions against Stephen W. Brown Radiology Associates that they were negligent in prescribing and administering radiation therapy as a result of which he suffered massive radiation injuries. He then amended his complaint, brought in 3 counts, in general as shown above, charging in particular as to Count 1 against Stephen W. Brown Radiology Associates that the radiation therapy was negligently administered in a field too large, improperly targeted, and he received an overdose of radiation as a result thereof. The medical doctors responded, again pleading the statute of limitation and denying the claims of negligence and that the consequences of the radiation injuries became apparent to the plaintiff as early as, or prior to, July, 1972, before the date of November, 1974, as alleged by him.

The case proceeded to trial before a jury. A medical expert from Houston, Texas, testified for plaintiff, by deposition, as to his treatment of the plaintiff after he was first examined by him in October, 1976, as to his findings of radiation injuries to his body, his diagnosis and prognosis, and that in his opinion the injuries sustained were not an accepted risk of radiation treatment; that in his opinion the treatment field as shown by certain X-ray port film was not in keeping with good medical care; the injury to the scrotum and sacral area was a radiation injury; the radiation dosages prescribed and administered were too high; the radiation field extended and encompassed areas that need not have been treated for the disease suffered by the plaintiff, and that the condition from which the plaintiff was presently suffering was not a reasonably anticipated risk of radiation treatment, that is, "the dose or radiation given to the area treated and the time period involved was too high; . . . the lower margin of the area treated extended beyond that which should properly be treated for cancer of the prostate." He summarized his opinion testimony by testifying "there were deviations from what I would consider standard or good treatment in terms of the dosages prescribed and given in terms of the field area that was treated and in terms of reaction to the radiation effects during the treatment such as changes in the skin possibly."

A verdict was returned by the jury in favor of the plaintiff, against Dr. Brizel and Stephen W. Brown Radiology Associates only, in the amount of $500,000. Judgment was then entered in favor of the plaintiff against Stephen W. Brown Radiology Associates, formerly known as Doctors Brown, Brown, Crawley & Brizel, in the amount of $500,000.

These defendants filed a motion for judgment notwithstanding the verdict and a motion for new trial. The motion for new trial was thereafter amended. Both of these motions were denied, and these defendants appeal. *Held:*

1. Defendants' basis for their contention that the trial court erred in denying the motion for judgment notwithstanding the verdict is that the evidence demanded a finding that the two-year statute of limitation had run as to the injuries allegedly sustained by the plaintiff, said evidence having shown that the injuries had been manifested much longer than the two years prior to the filing of the lawsuit. Likewise plaintiff had submitted a written request to charge that the two-year statute did not begin to run until Gowers (plaintiff) learned, or in the exercise of ordinary care could have learned or ascertained, that his injuries resulted from the negligence of defendants, if any. This charge as given was also claimed to be error.

There is no doubt that plaintiff suffered (and expected to suffer) some complication (post-radiation symptoms) from this therapy treatment as is noted in his testimony and medical records for the years 1972, 1973, and 1974 (episodes of diarrhea; ecchymosis; edema of scrotum, penis and prepuce; subcutaneous fibrosis back; radiation proctitis—all side effects).

However, the plaintiff testified that in October, 1974, he realized he had a problem and suspected something was wrong as the result of the recurring conditions from which he was suffering, although he was still advised by the doctors that this was a normal reaction, and that he had been advised from the very beginning of treatment as to possible side effects, and that some of these side effects or radiation problems could be 2 or 3 years in developing.

The relationship between a patient and his physician is a confidential relationship. See *Bryson v. Aven,* 32 Ga. App. 721 (124 SE 553); *Saffold v. Scarborough,* 91 Ga. App. 628 (86 SE2d 649). Thus, a patient has the right to believe what he is told by his medical doctors about his condition. Here, as in the case of *Colvin v. Warren,* 44 Ga. App. 825 (2) (163 SE 268), the plaintiff was well aware that he was suffering and would suffer from the radiation treatments, yet it cannot be said that any cause of action he had began immediately upon his suffering the side effects which his doctors had advised him would occur. Here plaintiff was advised that the side effects could last 2 or 3 years or longer and due to his confidential relationship with his physician he did not question his condition until (as believed by the jury by reason of the verdict, based upon the plaintiff's testimony and the instructions given by the court) plaintiff began to suspect he had been negligently burned and began his own investigation of same.

The basic law involving the statute of limitation is that the suit should have been brought within 2 years after the plaintiff, in the exercise of ordinary care, discovered the injury to himself by reason of the negligent act or acts of the defendants. See *Colvin v. Warren,* 44 Ga. App. 825 (2), supra; *Brown v. Brown,* 209 Ga. 620 (7) (75 SE2d 13). It is well settled that questions of negligence, diligence, contributory negligence, proximate cause, and *the exercise of ordinary care for one's protection,* ordinarily are to be decided by a jury. *DeGolian v. Faulkner,* 74 Ga. App. 866, 869 (41 SE2d 661); *Brown v. Brown,* 209 Ga. 620, 622 (7), supra.

The case sub judice is also similar to the Georgia doctrine of continuing tort as explained in such cases as *Parker v. Vaughan,* 124 Ga. App. 300 (183 SE2d 605); and *Piedmont Pharmacy v. Patmore,* 144 Ga. App. 160, 161 (1) (240 SE2d 888); that is, that the statute is tolled so long as the victim could not, in the exercise of ordinary care, have learned of it. See also *Everhart v. Rich's,* 229 Ga. 798 (2), 801-802 (194 SE2d 425), s.c. 128 Ga. App. 319 (196 SE2d 475).

The statute begins to run from the time the patient has knowledge, or through the exercise of ordinary care could have learned of the existence of the tort to him. See *Piedmont Pharmacy v. Patmore,* 144 Ga. App. 160, 161, supra; *Crawford v. McDonald,* 125 Ga. App. 289, 290 (187 SE2d 542); *Silvertooth v. Shallenberger,* 49 Ga. App. 133 (1) (174 SE 365) overruled on other grounds in *Parker v. Vaughan,* 124 Ga. App. 300, supra; *Saffold v. Scarborough,* 91 Ga. App. 628 (2), supra; *Colvin v. Warren,* 44 Ga. App. 825 (2), supra. Compare *Houston v. Doe,* 136 Ga. App. 583, 585 (3) (222 SE2d 131); *Montgomery v. Ritchey,* 151 Ga. App. 66, 67 (258 SE2d 733).

The trial court did not err in thus charging the jury as to the statute of limitation involved here, nor in denying the motion for judgment notwithstanding the verdict as claimed. The court also did not err in its charge as to the burden of proof that it was not necessary for another physician to testify that the defendant was guilty of malpractice or professional negligence and in also charging with reference to the statute of limitation. Same would not begin to run if the defendant physician had assured him that the injuries which had manifested themselves were only slight or only temporary and assured him that he would eventually be all right, thereby inducing plaintiff to refrain from making any further inquiry into his condition. The charge to the jury must be considered as a whole and each part considered in connection with every other part of the charge. The disjointed fragments may seem objectionable although "when put together and considered as a whole, it may be perfectly sound. *Brown v. Matthews,* 79 Ga. 1 (1) (4 SE 13); . . . *Jordan v. Fowler,* 104 Ga. App. 824, 826 (123 SE2d 334)." *Mendel v. Pinkard,*

108 Ga. App. 128, 134 (132 SE2d 217).

Further, the trial court did not err in denying the motion for new trial based on the general grounds as there was evidence supporting the verdict as to the claimed injury due to negligence arising out of the malpractice of the doctors in the treatment of the plaintiff resulting in the radiation burns, there being medical expert testimony this was not a reasonably anticipated risk of the radiation treatment. The presumption of law in this state is that a physician exercises his skills in the medical and surgical field in an ordinary skillful manner (reasonable degree of skill) until a want of such care and skill has been shown. In the case sub judice such has been shown and established to the satisfaction of the jury. *Hinkle v. Smith,* 12 Ga. App. 496 (77 SE 650); *Norton v. Hamilton,* 92 Ga. App. 727, 731 (89 SE2d 809); *Hayes v. Brown,* 108 Ga. App. 360 (1a) (133 SE2d 102). Compare *Slack v. Morehead,* 152 Ga. App. 68, 71 (262 SE2d 186); *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 664 (222 SE2d 162).

2. During the trial a certified copy of the rules of the Georgia Department of Public Health, Chapter 270-5-19 was submitted on behalf of the plaintiff and allowed in evidence. In particular, reference was made to rules found in 270-5-19-.04 entitled "Use of X rays in the Healing Arts." These rules state that gonadal shields shall be available for use on patients and requiring further that the output of X-ray machines shall be calibrated before usage, and after acquisition and that calibration shall be checked on an annual basis and further that recalibration shall be required after each X-ray tube replacement and after any change or replacement in the generating apparatus which could affect a change in the X-ray output. Also it was required that a copy of the calibration report, consisting of the results, the calibrator's name, and the method used "shall be dated and kept on file by the individual in charge of the installation."

The plaintiff strenuously urged that he should have been protected by the use of such gonadal shields, and one of the issues involved was the question of availability of such shields by the defendant, Augusta Radiation Therapy Center, Inc., and possibly at Talmadge Memorial Hospital, although it was not a defendant in this case. There was also much expert testimony with reference to the use of such gonadal shields in X-ray therapy. There was also much testimony with reference to the use of X rays in medicine, curative and diagnostic, with reference to the healing arts; that is, radiation therapy. It was the contention of the defendants that the rule referring to gonadal shields being available for use on patients merely referred to diagnostic situations and not to radiation therapy and that gonadal shields were not required at the therapeutic X-ray

installation, the defendant Augusta Radiation Therapy Center, Inc.

During the argument counsel for the defendants sought to argue to the jury "in reference to gonad shields . . . the only type installation that they are to be used in or provided in is in a diagnostic center." Whereupon counsel for plaintiff objected that counsel for the defendants in his argument was making a misstatement of the law and same was improper. In ruling on the issue the court stated, "I agree with that." Counsel then continued his argument with the request to the jury to read the evidence with reference to the exhibits, the rules relating to "different types of installation, different types of X-ray equipment and the use thereof . . ." It is noted that no motion for mistrial was made at this time.

Thereafter, the court instructed the jury that the rules and regulations promulgated by the Georgia Department of Public Health pursuant to the laws of Georgia provide and establish requirements for use of X rays, "including a requirement that the output of the X-ray machine shall be calibrated before usage, and that check calibration shall be made on an annual basis. They further provide that calibration shall be required after X-ray tube replacement and after any change or replacement in the generating apparatus which would affect a change in the X-ray output . . . [and] . . . a copy of the calibration report consisting of results, the calibrator's name and the method used shall be dated and kept on file by the individual in charge of the treatment facility."

The court then instructed the jury that these rules and regulations "promulgated by the Georgia Department of Public Health pursuant to the laws of Georgia . . . require that gonadal shields shall be available for use on patients," and "if you find that any defendant violated any provision of law which I have given you in charge such violation would be negligence per se," and thereafter defining negligence per se.

Error has been enumerated that the court erred in sustaining counsel for the plaintiff's objection during the argument and in stating in the presence of the jury, that is, that the court agreed with the plaintiff's counsel's statement as to the making of a misstatement of the law. Further, it is enumerated that the trial court erred in charging, at the request of the plaintiff, that the rules and regulations of the Georgia Department of Public Health require that gonadal shields be available for use on patients and in refusing to charge defendants' request that the rules did not require that gonadal shields be available for use on patients undergoing treatment by therapeutic X-ray equipment. We note at the outset that the jury returned a verdict in favor of the defendant Augusta Radiation Therapy Center, Inc. Thus, the facility providing the X-ray

equipment for use in the "healing arts" is no longer in the case, and the charge as given with reference to these rules and regulations and requirements of the facility providing such equipment for use in the "healing arts," as well as a charge of negligence per se, would refer to this defendant more than any other defendant in the case. However, the defendants offered considerable testimony that they would not have used gonadal shields in the treatment of plaintiff whether available or not. Medical expert testimony was offered that even a very low dose of radiation would get to the gonads or testicles without the shields and that in general in treating carcinoma of the prostate where the average age is 60, 65 or 70 the object of sterility is not important, and there was no need to use such shields. As to the rules and regulations promulgated with reference to the requirements as to the calibration of the equipment which applied to the defendant, Augusta Radiation Therapy Center, Inc., furnishing the facility we cannot see how these defendants can complain. There was no testimony or charge that the gonadal shields had to be made available by the defendant doctors. The charge as given made clear that same was required as to the facility. Consequently, we see no error in the charge as given by the court nor in the ruling made during the oral argument in which the court sustained an objection to the argument of counsel for the defendants that the rules and regulations referred to gonadal shields only to installations "to be used in or provided in . . . a diagnostic center."

In sustaining the objection the court could have probably used language more apt to the situation, that is, "sustained," rather than "I agree with that." However, we believe that the statement made in the argument that the rules only referred to a "diagnostic center" was a misstatement of the rules having the force and effect of law. Under all the circumstances here we find no harmful error in the ruling made by the trial court. See in this connection *Garrison v. Rich's, Inc.,* 154 Ga. App. 663, 664 (3) (269 SE2d 513), with reference to counsel misstating the law to the jury. One may no longer argue or read the law to the court in the presence of the jury in a civil case. See *Central of Ga. R. Co. v. Sellers,* 129 Ga. App. 811, 815 (4) (201 SE2d 485); *Harris v. Collins,* 149 Ga. App. 638, 639 (3) (255 SE2d 107); *Metropolitan Publishers Representatives v. Arnsdorff,* 153 Ga. App. 877, 878 (2) (267 SE2d 260); and *Griffin v. State,* 154 Ga. App. 261, 265 (4) (267 SE2d 867). In civil cases the jury shall receive the law exclusively from the trial judge. Plaintiff's counsel was without authority to advise the jury as to the meaning of the rule of law (Department of Public Health) in the case sub judice.

As the rules referred to in the charge of the court requiring that gonadal shields be available for use on patients was a reference to the

facility providing the use of the X-ray equipment, and the jury having found in favor of that defendant (Augusta Radiation Therapy Center, Inc.), we see no harmful error requiring a reversal as to the defendant doctors who offered expert opinion testimony that they are used primarily in treating young people in the reproductive age but not in treating carcinoma of the prostate in the elderly. There is no merit in these enumerations of error.

3. During this lengthy trial (the trial transcript consisting of 4,227 pages and 1,017 pages of exhibits), a medical expert on cross examination, and who had been sequestered, requested a delay in testifying due to an operation he had scheduled. This occurred at the end of the day shortly before the court adjourned. After much colloquy and discussion the court denied any delay and instructed the doctor to be in court at 10:00 a.m. in the morning. The court then instructed: "I'm going to send this witness out and I'm going to keep him under sequestration. That means that no one is going to talk to him until he reports back tomorrow morning and cross examination is completed." Whereupon counsel for the defendants objected to not being able to talk to the witness who was a defense witness. The court reiterated its direction that the witness was not going to have any opportunity to talk to anybody while he was under cross examination. Counsel then requested that he be heard but was not allowed to be heard until court convened in the morning. Objection was then made, and error is here enumerated that it was error to prohibit the witness from discussing the case with anyone including counsel for the defendants, and that it was error in not permitting counsel to be heard on his objections to the instructions and directions to the witness. In the argument counsel complains of the judicial impatience displayed by the court. As stated above, this was a very lengthy trial, but there is no merit in the enumeration of error complaining that counsel was not permitted to be heard as he was allowed to be heard when court convened the next morning. As was the case in *Dyke v. State,* 232 Ga. 817, 825 (209 SE2d 166), "the record does reveal a good deal of conflict between the court and counsel during the trial but it fails to show prejudice . . ." As stated further in the *Dyke* case, it is the duty of the trial court to control the trial of the case and to insure a fair trial to both sides on the disputed issues in the case, thus sometimes requiring interference by the court with the conduct of counsel or with a witness in the trial, and the trial court has broad discretion in the handling of such matters.

As to the other enumeration of error the instructions given to witnesses by the trial court upon their separation during the suspension of the trial is a matter of discretion which this court will not control unless plainly and palpably abused. See *Broyles v.*

*Prisock,* 97 Ga. 643 (2) (25 SE 389). The court has a broad discretion in its enforcement of the sequestration rule. See *Watts v. State,* 239 Ga. 725, 731 (238 SE2d 894). We find no error here.

4. The next two enumerations of error are addressed to a refusal by the court to permit a recalled witness who admittedly had discussed or talked about the case between the dates of February 28 when he first testified and March 15 when he was recalled. Error is also claimed because counsel was not allowed to question the witness upon being recalled to establish if he had discussed his testimony or the testimony of anyone else during this period of time. Generally, the testimony of a witness who has violated the rule of sequestration is admissible although he may be guilty of contempt. See in this connection *Shelton v. State,* 220 Ga. 610 (140 SE2d 839), and cases cited therein; *Dudley v. State,* 148 Ga. App. 560, 562-563 (251 SE2d 815); *Watts v. State,* 239 Ga. 725, 731, supra; *Assn. of Bridge, Structural & Ornamental Ironworkers v. Moore,* 149 Ga. App. 431, 435 (254 SE2d 438).

However, it is noted here that this was a recalled witness who had previously testified. The trial court is vested with a wide discretion in enforcement of the sequestration rule. *Jarrell v. State,* 234 Ga. 410, 420 (6) (216 SE2d 258); *Wessner v. State,* 236 Ga. 162, 167 (3) (223 SE2d 141); *Pearley v. State,* 235 Ga. 276 (219 SE2d 404). In the *Wessner v. State* case, a witness who had previously testified was observed by the trial judge remaining in the courtroom in a trial in which the sequestration rule had been invoked. Whereupon, the court asked counsel if he intended to have him testify and received the reply that "they did not intend to recall the attending psychiatrist." It was there held that the trial court did not abuse its discretion in enforcing the sequestration rule when counsel subsequently sought to recall the attending psychiatrist to the stand. Consequently, based upon these decisions, we find no merit in these enumerations of error.

As to the refusal of the court to allow an examination of the witness as to with whom he had discussed the case, it is noted that when the witness was recalled the court asked whether he had discussed this case with anybody since leaving court on February 28 (recalled on March 15). The witness answered, "Yes, I've talked about the case, no specific person in the case." Whereupon, the court ruled that since he was under the rule of sequestration it was not going to allow him to testify as he would be disqualified if he had discussed it at all, and having already testified his testimony was part of the record in the case, and he was excused as a witness in the case, as it was the responsibility of counsel under the circumstances to instruct witnesses not to discuss the case in the event counsel

expected to recall them as witnesses. We find no error here.

5. The next two enumerations of error are concerned with the sustaining of an objection to a question by defendants' counsel of an expert witness based on the testimony previously given by another expert witness, the court stating in sustaining the objection that he was not going to allow one witness to be pitted against another witness. An expert may only give opinions on facts testified to by other witnesses but not upon such other witnesses' opinions. *Walker v. Fields,* 28 Ga. 237 (2), 239. A witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others. See *Central of Ga. R. Co. v. Brower,* 106 Ga. App. 340, 346 (3) (127 SE2d 33) reversed on other grounds, s.c. 218 Ga. 525 (128 SE2d 926). An examination of the testimony given by the previous expert witness shows clearly that his testimony was opinion testimony. Further, it is a well settled rule that in order to preserve a ground of objection with regard to the exclusion of oral testimony it is necessary that the complaining party show what he expects to prove and that such evidence was material, relevant and beneficial to him. See *Berger v. Plantation Pipeline Co.,* 121 Ga. App. 362, 363 (3) (173 SE2d 741); *Griffin v. Henderson,* 117 Ga. 382, 384 (43 SE 712); *Mabry v. Henley,* 123 Ga. App. 561, 564 (181 SE2d 884). Also, counsel made no effort to allow the witness to testify further by asking him a hypothetical question with reference to the matter in issue. We find no merit in these enumerations of error.

6. Error is next complained of in that it was error to refuse to permit defendants' counsel to recall the plaintiff for further cross examination on the morning of March 16, 1979, and in refusing to permit counsel to state to the court what was proposed to be shown by this testimony. Plaintiff had fully testified on February 26, 1979. At that time he was also cross examined and was thereafter recalled for further cross examination upon the presentation of the defendants' case on March 12. Note here that the suit was based upon "massive radiation injuries" and the plaintiff was seeking damages for pain and suffering requiring immediate and extensive treatment including a series of surgical procedures. Plaintiff had testified that he was supposed to report for surgery in Houston on the 18th to have it on the 19th of March.

On Friday, March 16, counsel for the plaintiff requested of the court that the plaintiff be excused from the trial of the case at which time the court stated that plaintiff was excused for the remainder of the trial. Objection was then made by defendants' counsel that he would like to recall him for cross examination, at which time the court stated that he had already had a cross examination and re-cross examination of the witness and that he was going to excuse him and

let him go in and get his surgery. Counsel for the defendants stated that he would like to perfect the record as to what he expected to show on further interrogation but the court declined, stating, "I don't think that's necessary either."

In support of the amended motion for new trial on this point evidence was presented to show that while the plaintiff was scheduled to undergo surgery on March 19, 1979, it was canceled by plaintiff's son on March 12, 1979, acting on behalf of his father. Plaintiff's doctor deposed that on March 14, 1979, he informed one of the Augusta doctors involved in the litigation of the cancellation of the surgery and that he did not expect the plaintiff to be in Houston for the surgery. Other testimony presented at the motion for new trial hearing disclosed that defendants were aware during the week of March 12, 1979, that the March 19 surgery previously scheduled had been canceled, and counsel for the defendants was aware of the cancellation and the purpose in putting plaintiff back on the witness stand for further cross examination was for the specific purpose of establishing that the scheduled surgery had been canceled and to further question him on other matters "which deponent felt relevant to the defense of the case since plaintiff sought to be and was excused from court for the remainder of the trial and in fact did not return for the remainder of the trial."

The plaintiff also testified by deposition with reference to the amended motion for new trial that he did testify that he was to be admitted on the 18th to be operated upon on March 19, but further he was in no hurry to have the operation because he wanted other tests run before they operated on him. He had requested his son to call and cancel the surgery on the 19th but he did go to Houston to see his doctor but not for the operation. There was also an explanation made that plaintiff's doctor did not want to operate while the lawsuit was going on.

The trial court was correct in its ruling that the plaintiff had already been recalled to the witness stand for cross examination after he had submitted to cross examination following his direct examination and that counsel had every opportunity to examine plaintiff extensively. Hence the court was within its discretion in attempting at some point to bring to a conclusion the trial of this voluminous case.

However, it is a well settled rule that a complaining party must show what he expects to prove and that such evidence is material, relevant, and beneficial to him. See in this connection the citations of law in Division 5 of this opinion. It is also a general rule that where offer of proof is necessary it is error for the trial court to refuse an opportunity to counsel to state what he proposes to prove by the

evidence offered. See *Weathers Brothers Transfer Co. v. Jarrell,* 72 Ga. App. 317, 345 (33 SE2d 805); *Holland v. Williams,* 126 Ga. 617, 618 (55 SE 1023); *Mabry v. Henley,* 123 Ga. App. 561, 564-565, supra. Thus it appears from the evidence considered on the amended motion for new trial that the defense was aware that surgery had been canceled and the purpose of calling the plaintiff for re-cross examination was merely to establish "that the scheduled surgery had been cancelled" and as to "other matters . . . relevant to the defense of the case." While there appears to be somewhat of a conflict as to the reasons why plaintiff's doctor canceled the surgery, whether of his own accord or based on the request of the son of the plaintiff, none of this testimony appears to be relevant and material to the issues so as to show the defendants were harmed when the court refused to allow their counsel to show what he expected to prove by further cross examination. See in this connection *Mabry v. Henley,* 123 Ga. 561 (1b), 565, supra. There is no merit in these complaints although the trial court should have allowed counsel an opportunity to state in the record what he was proposing to prove by the evidence he intended to offer. See also in this connection *Griffin v. Henderson,* 117 Ga. 382 (2), 384, supra.

7. During the trial two X-ray technicians were called as witnesses for examination and were each examined as to one of the doctor defendants' habits and procedures for marking port films when the films did not show the exact area the doctor defendant wished to treat and as to whether the doctor defendant on occasion changed the area to be treated from that shown on the port film. One of these witnesses was also not allowed to give testimony regarding a line put on the port film because no foundation for same had been laid inasmuch as she had not seen the doctor defendant draw the line on the port film or that she knew that he had drawn the line on the port film. The testimony of these witnesses with reference to the habit and custom of the defendant doctor was properly excluded. See *MacKenzie v. Jackson,* 82 Ga. 80 (2) (8 SE 77), wherein an attempt was made to show the custom and habit of a clerk of court in endorsing papers given him for record. See also *W. & A. R. Co. v. Slate,* 23 Ga. App. 225 (3), 226 (97 SE 878), wherein it was not permissible to prove habitual acts of recklessness or negligence at particular times and places for the purpose of showing "general habit, character, and conduct." See also *Ga. Sou. & Fla. R. Co. v. Thornton,* 144 Ga. 481 (1) (87 SE 388).

These witnesses testified fully as to information within their knowledge as to the taking of port films and the treatment given in this particular type of radiation treatment. However, the defendant doctor had previously testified, as well as that of another medical

expert, with reference to the taking of the port films. Consequently, we see no error in the court's refusal to allow these two witnesses as X-ray technicians to testify as to the habit and custom of the medical doctor in the taking of port films. These technicians were not the treating physician and should not have been allowed to testify as to his habit and custom in the use of the X-ray equipment, that is, that he usually treated patients in a different area from that shown on the port films that were taken. A witness may testify as to his fixed and uniform habit in such cases but not as to the habit and customs of another. See *Leonard v. Mixon,* 96 Ga. 239 (23 SE 80). Compare *Farmers Ginnery & Mfg. Co. v. Thrasher,* 144 Ga. 598, 599 (3a) (87 SE 804); *Gulf Refining Co. v. Smith,* 164 Ga. 811, 812 (7) (139 SE 716); *Burch v. Americus Grocery Co.,* 125 Ga. 153 (3) (53 SE 1008); *Russell v. Pitts,* 105 Ga. App. 147, 149 (123 SE2d 708); *Interstate Life & Acc. Ins. Co. v. Whitlock,* 112 Ga. App. 212, 219 (144 SE2d 532). There is no merit in these enumerations of error.

8. At the completion of testimony of one of plaintiff's expert witnesses, after being examined and cross examined, counsel for plaintiff sought to have him excused and recalled for redirect examination at a later date. However, the court instructed that he was not excusing this expert witness but that the witnesses should be examined completely and dispensed with rather than have the witnesses come back and forth over a long period of time. Whereupon, plaintiff's counsel excused the witness and did not seek to reexamine this witness on redirect examination. Upon receipt of this information counsel for the defendants stated that he wanted to recross examine the witness on matters that came out on subsequent testimony, but the court announced that since there was no redirect examination there would be no necessity for any recross examination, and the witness was excused. It is noted here that the defendants' counsel failed to state what he expected to prove by further recross examination of the witness which he must do. See *Cross v. State,* 136 Ga. App. 400, 409 (221 SE2d 615); *Waters v. State,* 80 Ga. App. 104 (3) (55 SE 677); *Foster v. National Ideal Co.,* 119 Ga. App. 773, 774 (168 SE2d 872). Further, this expert witness was a physicist testifying primarily with reference to the equipment manufactured by the defendant Varian and as to the procedures that should be employed in the use of it which relates to the defendant Augusta Radiation Therapy Center, Inc. No verdict was found as to these defendants, and we see no error in the trial court excusing this witness from further examination when plaintiffs sought redirect examination of him. As to the extent of reexamination of a witness being left to the trial court's sound discretion, see *Daugherty v. Vick,* 127 Ga. App. 767, 768 (1) (195 SE2d 208).

After this witness was excused and the court recessed for the day the witness was served by the defendants with a subpoena requiring his appearance in court several days later. Counsel contends that the subpoena was properly served and that the trial court then erred in granting a motion to quash the subpoena and in not permitting counsel for the defendants to be heard. However, counsel has produced no evidence to show what this witness would have testified to had he been again placed on the witness stand and we find no reversible error here.

9. During the cross examination of plaintiff's wife it was not error for the trial court to limit her cross examination with reference to certain letters because there was no showing that she had ever seen any of these letters between doctors. Since she was not the recipient of these letters, the trial court did not err in limiting her cross examination with respect thereto. Furthermore, the letters and records referred to were in evidence.

10. The next enumeration of error complains of the refusal to allow one of the doctors who treated the plaintiff to respond to questions to illustrate to the jury on the blackboard his method of treating the plaintiff. After being examined and the court learning of the testimony being given, the court was of the opinion that he had already testified once as to this testimony, and the court stated it was time to limit his examination of the witness and he was not going to allow him to repeat over and over some of the things he had already testified to before. We find no reversible error in the further limitation upon this witness' testimony.

11. With reference to the cross examination of the doctor who treated the plaintiff with reference to the figure 358 being more than the figure 326 in treatment of the plaintiff with rads of radiation, the doctor witness answered that the difference between 358 and 326 was a very "small percentage." The trial court then did not err in allowing a cross examination of the doctor as to whether $358 was greater than $326. We find no error in the trial court's allowance of further cross examination of the witness in comparing money to rads although there simply is no comparison except as to the issue of percentages. The trial court is granted broad discretion in controlling the conduct of counsel. See *Cohen v. Saffer,* 43 Ga. App. 746 (2) (160 SE 130).

During cross examination this doctor was also asked whether or not he had testified on direct examination that he had never treated anyone on the particular equipment in question. His reply was "That's correct," but he requested that he be allowed to amplify his answer. Counsel for plaintiff stated, "No, I do not want an amplification of the issue," and the court ruled that no explanation was needed. Counsel for the defendants contends that it is well

established that a witness may always explain his answer or, as requested here, to amplify it. However, in the situation here with reference to the four week trial (the trial transcript consisting of 4,227 pages and 1,017 pages of exhibits) in which the question was merely repetitive of his direct testimony, we find no error as the trial court is granted broad discretion concerning examination of witnesses. See in this connection *Mimbs v. State,* 139 Ga. App. 204, 206 (4) (228 SE2d 193) and *Daugherty v. Vick,* 127 Ga. App. 767, 768, supra. A further issue arose with reference to the fact that the doctor had abandoned the treatment regimen when the plaintiff patient developed a complication. In reply to the question that the fact that he had developed a complication was a pretty high coincidence, the witness replied, "Yes, sir. But I think there are other extenuating circumstances." Counsel for the defendants then requested that the witness be permitted to explain. Whereupon the court replied, "He has already had an explanation," and directed the cross examination to proceed. For the same reason as above the court did not err in refusing to allow counsel for the defendants to inject himself into the cross examination and ask that the witness be permitted to explain his answer.

In another instance the witness sought to explain his answer before answering the question. Whereupon the court ruled that "I'm going to give him that opportunity to explain, after he answers the question. If he wants he has the right to do so." After further colloquy with counsel, defendants' counsel was instructed to be seated, that is, "Sit down, . . . I have had enough of that." It is noted here that counsel did not refuse the witness' right to explain as contended. Any impatience of the court was probably understandable due to the four weeks of trial and the lengthy proceedings. We find none of these enumerations of error to be meritorious. See *Pope v. Firestone Tire & Rubber Co.,* 150 Ga. App. 396, 397 (1) (258 SE2d 14); *Mimbs v. State,* 139 Ga. App. 204, supra; *Pierce v. Pierce,* 241 Ga. 96, 102 (6) (243 SE2d 46).

12. In the direct examination of the doctor who treated plaintiff with reference to a discussion of the techniques of an expert author in the field, the witness sought to add information that the author's philosophy as to treatment was "still not definite," at which time objection was made that the witness could testify of his own knowledge but could not extemporize on what somebody else's philosophy may or may not be. Whereupon the court ruled that the witness could testify as to what he knows and what he has done himself. The witness then continued in answer to another question to testify as to the contents of the same book. Objection was again made that same was not in rebuttal to anything that was introduced on

cross examination, and again the court sustained the objection. As stated above in Division 5, the expert witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others. There is no merit in the contentions here that the court erred in sustaining the objections to the redirect examination of the witness with reference to the techniques expressed in a particular expert doctor's writings.

13. In the next four enumerations of error with reference to error enumerated to the refusal to allow an expert to explain his answers with reference to cancerous lesions of the prostate and the use of implants in treating cancer of the prostate, the alleged errors are stated without argument (as to reason) as defined in *Haskins v. Jones,* 142 Ga. App. 153 (1) (235 SE2d 630). These enumerations of error are deemed abandoned or have been covered and are controlled by our rulings in Divisions 5, 6, 7, 8, 10, 11, and 12, above, in that the trial court has a broad discretion as to examination and cross examination of a witness, and the trial court did not err in stating in general that a witness is not entitled to make a speech every time he answers a question and in general that he did not deem that the questions called for further explanation. None of these enumerations is meritorious.

14. Error is next assigned to the refusal to allow a medical article in evidence to prove the contents thereof. The general rule is that medical articles may be used in forming an opinion and in questioning witnesses but are not themselves admissible in evidence. See *Boswell v. State,* 114 Ga. 40 (3), 43 (39 SE 897). There is no merit in this complaint.

15. The next five enumerations of error complain that the trial court was not cautious and circumspect in his language and conduct before the jury and that he overstepped his bounds, thereby prejudicing the rights of the party litigants. We have somewhat discussed this point in Divisions 3, 4, 6, and 11, above, and have reviewed the inferences of alleged prejudicial misconduct and found them without merit. As was stated in *Pierce v. Pierce,* 241 Ga. 96, 102 (6), supra, no motion for mistrial was made and the alleged prejudicial remarks were generally made when ruling upon objections to evidence. "The trial judge is a minister of justice, not a mere chairman preserving order at a meeting or a mere moderator of a debate, and has a duty to govern the progress of the trial. *Heard v. Heard,* 99 Ga. App. 864, 869 (110 SE2d 76)." *Culwell v. Lomas & Nettleton Co.,* 145 Ga. App. 519, 522 (244 SE2d 61), reversed on other grounds s.c. 242 Ga. 242 (248 SE2d 641). There is no merit in these complaints.

16. The court did not err in charging the burden of proof as to

alleged idiosyncrasies; that is, the contention made by the defendants that the injury received by the plaintiff was not due to negligence of the defendants but due to idiosyncrasies making the plaintiff hypersensitive to X-ray exposure. It was the duty of the jury to determine whether or not the plaintiff was hypersensitive to X-ray exposure but the burden of proof as to the condition is upon the defendants making such contention. See Code § 38-103; *Kuttner v. Swanson,* 59 Ga. App. 818, 825 (10) (2 SE2d 230).

17. The court did not err in charging on pain and suffering, future medical expenses, and elements of pain and suffering such as "deformity or unnatural condition." Nor did the court err in charging the age old expression that the jury was authorized to accept plaintiff's own testimony regarding his injuries and suffering in preference to the evidence of a "whole college of physicians." See *Great A. & P. Tea Co. v. Dupee,* 71 Ga. App. 148 (2), 153 (30 SE2d 365); *Southern R. Co. v. Petway,* 7 Ga. App. 659 (1) (67 SE 886); *Southern R. Co. v. Tankersley,* 3 Ga. App. 548 (60 SE 297); *Wolfson v. Rumble,* 121 Ga. App. 549 (2) (174 SE2d 469).

As to the charge defining ordinary care and diligence and the law of Georgia as expressed in Code § 84-924, we find no error in the charge. Examination of the charge as a whole fails to disclose harmful error. *Mendel v. Pinkard,* 108 Ga. App. 128, 134 (2), supra, and cases cited therein.

18. The suit herein was one against Stephen W. Brown Radiology Associates, formerly known as Drs. Brown, Brown, Crawley & Brizel, and others. In addition, another doctor was named as a defendant who was not a member of the partnership. No judgment was returned against him. The jury returned its verdict against "Dr. Brizel and Brown Radiology Associates," although Dr. Brizel was not named as a party defendant except that he was a former member of the partnership. Upon the objection by counsel for the defendants that Dr. Brizel was not even a party defendant, the court noted that that could be corrected, and judgment was then entered against Stephen W. Brown Radiology Associates, formerly known as Drs. Brown, Brown, Crawley and Brizel. As verdicts are to be upheld if capable of legal intendment, we see no error in the judgment which followed the verdict. While counsel for the defendants also enumerates as error the refusal to grant a new trial because the jury verdict was erroneous, illegal and evidenced gross mistake by the jury, we find no reversible error as no evidence has been produced that it was based upon bias and prejudice.

*Judgment affirmed. Banke and Pope, JJ., concur.*

DECIDED FEBRUARY 4, 1981 —

REHEARING DENIED MARCH 5, 1981 —

*Gould B. Hagler,* for appellant.
*Thomas R. Burnside, Jr., James V. Wall, O. Torbitt Ivey, Jr., D. Field Yow,* for appellees.