**67799, 67800. LORENTZSON v. ROWELL et al. (two cases).**

McMurray, Chief Judge.

This is a case of medical malpractice (medical doctor-ophthalmologist), fraud and products liability brought against the plaintiff's treating physician (as to the malpractice and fraud) and products liability against the manufacturer of the drug prescribed and used (allegedly a steroid). The uncontroverted facts disclose that Dr. Roger Rowell, the defendant doctor (ophthalmologist) treated the patient Clarence Lorentzson for a number of years. Such treatment consisted of prescription eyeglasses and treatment for scratching of both the left and right eye, the patient being a state employee who had been hit in the right eye with pine needles while chasing a moonshiner. The left eye was later scratched by a paper shopping bag.

Lorentzson contends he had other occasional eye problems with styes and irritation of the eyelids. He asked Dr. Rowell for mild medication for treatment of the styes and eye irritation about December of 1976. Whereupon, Dr. Rowell prescribed eye drops and presented him with a physician's sample vial of Inflamase ⅛%, manufactured by Smith, Miller and Patch. He used these drops as needed and was given no other instructions or directions on the use of the drug. The vial lasted about a year, using a drop or two as needed and seemingly reduced the eye inflammation with no noticeable problem. Approximately one year later (1977) the prescription was refilled (apparently by telephone to his pharmacist) which consisted of Inflamase ⅛% which lasted about a year. The second time it was refilled (also by telephone to the pharmacist) and Lorentzson noticed it was refilled as Inflamase 1%. Dr. Rowell's medical records disclose an inference as to a refill of "Inflamase Forte" on 12/23/77 and again on 12/5/78 a refill was wanted (apparently by Lorentzson) as to "Inflamase Forte." Lorentzson contends that he started using the drug Inflamase Forte 1% obtained from the pharmacist on the 11th or 12th of February 1979. Immediately after putting a drop or two in each eye he got a mild blurring and a real heavy mucous which cleared up later in the day. The second time he used it was on the 12th. He put one drop in each eye and remarked to his wife that it hurt. In driving to work thereafter he noticed that his eyes were blurring, that it was like a piece of plastic over his right eye which persisted throughout the day. On Wednesday the 14th his eyes were watering badly and the cells erupted (epithelial cells all over his right eye). He found it difficult to see and proceeded to go to the doctor. He thought it was due to a

stye. Dr. Rowell practices with a clinic composed of four doctors whose practice is limited to the eye. On February 14, 1979, after his right eye erupted, the patient saw Dr. Hobson Rice at the clinic, and the patient's medical notes disclose that on 2/14/79 he had a drainage of the right eye and had used Inflamase from 12/23/78. He was then put on other drugs, antibiotics, as of 2/17/79, and continued to have difficulties, 3/30/79, and vision was still hazy, 4/7/79, the notes stating that his vision was still hazy "started right after using Inflamase — has persisted since then." Lorentzson contends that when he saw Dr. Rice he was told by Dr. Rice that he did not think Inflamase usage was the cause of his right eye eruption, and Rice said disease of the cornea was the problem although there had been no prior history of any corneal disease. However, Dr. Rowell later advised him he did not have any disease of the cornea. Because of the statement he had a disease of the cornea Lorentzson twice went to see a Dr. Thomas Harben. The patient also talked to another doctor in the clinic (Rowell's) but received no response when he asked why his eye had erupted. Everytime he mentioned Inflamase to Dr. Rowell, the doctor would not mention it. The eruption continued some five or six or seven times in number following February 14, 1979, and in addition there was double vision which began after these eruptions.

Suspecting that there was a possibility that the medication Inflamase which he had been taking caused his eye problems, the patient saw other doctors; and in discussing the matter with another state employee he was able to obtain an appointment with Dr. Michael Roth, Director of Glaucoma Services, Medical College of Georgia, who, upon examination of his eyes gave him a guarded report as to diplopia, double vision, etiology unknown. Since Dr. Roth was leaving (the institution) Lorentzson returned and saw a Dr. Luxemberg, head of the Department of Ophthalmology, Medical College of Georgia, who also gave him a thorough examination. However, no one commented that Inflamase ⅛ % or Inflamase Forte 1% had caused the problem. Dr. Luxemberg did establish what the patient's problem was, but did not tell the patient, indicating, however, that he did not think Inflamase was the cause of it, the patient assuming that he had talked with Dr. Rowell and Dr. Harben, his possible former students. Dr. Harben had been the other ophthalmologist he contacted for one of the eruptions in his eye who gave him the same treatment as Dr. Rice (with the Rowell group). Dr. Luxemberg recommended that he cease bouncing around from one ophthalmologist to another and return to Dr. Rowell which he did during the year 1980. Dr. Rowell then performed semi-surgery after another eruption (the removal of a layer of tissue) and the patient testified (by deposition) it seemed to clear his vision and his double vision disappeared. He then was referred by Dr. Rowell to two other doctors at Emory Uni-

versity (Raslett and Waring). We note that Dr. Rowell's notes reflect that an appointment was made to see Dr. Waring on July 8, apparently in 1980. None of the doctors he has seen has ever said anything about Inflamase during their examination of the eyes. However, the patient's pharmacist advised him that Inflamase was not an antibiotic and he, the pharmacist, would not use it as it tends to increase bacterial activity.

Lorentzson's only complaint as to Dr. Rowell was the giving of this Inflamase, a steroid. He had no objection to his treatment. On February 13, 1981, Lorentzson filed a negligence action pro se against both Dr. Rowell and the manufacturer of the drug. But on July 22, 1981, this complaint was dismissed and his present action was refiled by his legal counsel on January 20, 1982.

The defendants answered, in substance, denying the complaint, admitting only jurisdiction. However, Dr. Rowell did admit treating the defendant.

Following discovery, based upon the admissions found in the patient's medical records, the plaintiff's deposition and other records of file and the expert opinion testimony by affidavit of the defendant doctor, both defendants moved for summary judgment. The doctor's affidavit stated that "during my professional care and treatment rendered to the plaintiff, including the prescription of any medication for plaintiff's eyes and right eye in particular, I exercised a reasonable degree of medical skill and care and exercised and possessed the required degree of medical skill, care and knowledge at all times and under all circumstances relevant to my treatment of the plaintiff. Further, in my opinion, all professional services rendered to the plaintiff were properly and competently performed in full compliance with standards prevalent in medicine generally. The incident complained of by plaintiff in his complaint was not caused or contributed to in any way by any act or omission on my part and did not result in whole or in part as a result of a failure on my part to exercise a reasonable degree of medical skill and care."

Summary judgment was first granted as to the defendant doctor but this order was later vacated. However, on September 6, 1983, the court again granted the defendant doctor's summary judgment motion after making certain findings of fact and conclusions of law based upon what the court contends were the issues in the case, that is, whether the statute of limitation barred plaintiff's action and whether plaintiff's medical testimony sufficiently opposed the summary judgment motion. The plaintiff's medical testimony is missing from this record, but upon examination of the order we find the court merely considered the statute of limitation issue. The findings of fact were with reference only to the use of Inflamase Forte 1% by the patient who then noticed blurring of his eyes on February 11 and 12, 1979; his

treatment on February 14, 1979, when his eye "erupted," the relative claims of the plaintiff and defendant doctor with reference to the running of the statute of limitation (two years), that is, the plaintiff contending there was a continuing tort or, in the alternative, fraud by the defendant during which time the running of the statute was tolled "until February 14, 1979"; and the defendant's contention that the continuing tort and fraud theories do not apply, and "the statute began to run on December 5, 1978." The trial court then found as a matter of fact that the statute of limitation began running on "December 5, 1978," and even if it were tolled prior to February 12, 1983, the statute began "to run again no later than February 12, 1979," the plaintiff having " 'discovered' the negligence or wrongful act alleged to have been committed by the Defendant Rowell and the alleged causal relationship between this act and the Plaintiff's eye problems," there being no evidence that plaintiff was prevented from learning the true facts as to "any action, or inaction, by Defendant Rowell subsequent to February 12, 1983," and the statute of limitation resumed running "on or before February 12, 1979 and therefore expired prior to the original filing of this suit." Based upon these facts, the trial court granted summary judgment to the defendant Dr. Rowell. In Case No. 67799 plaintiff appeals the grant of summary judgment in the order of September 6, 1983, filed on September 7, 1983.

Thereafter, on September 27, 1983, based upon the same facts as set forth above, the court found the statute of limitation began to run "no later than February 12, 1979, at the time of Plaintiff's second and last use of the drug in question [and] Plaintiff knew or with reasonable diligence should have known of both the alleged injury and the alleged causal relationship between that injury and the drug Inflamase Forte 1%." The trial court held the statute of limitation had run and expired prior to the original filing of this suit on February 13, 1981, and final judgment was entered in favor of the defendant manufacturer. In Case No. 67800 plaintiff appeals the final judgment in which judgment was entered in favor of the defendant manufacturer. *Held*:

Generally, a cause of action will lie against a physician or surgeon who does not bring to the exercise of his profession a reasonable degree of care and skill which is based upon former Code Ann. § 84-924 (now OCGA § 51-1-27, effective November 1, 1982). "The standard of care and skill fixed by the statute is that which, under like circumstances and in similar conditions, is employed by the medical profession generally. *Summerour v. St. Joseph's Infirmary*, 160 Ga. App. 187, 188 (286 SE2d 508) . . .; *Fain v. Moore*, 155 Ga. App. 209 (270 SE2d 375)." *Jackson v. Gershon*, 165 Ga. App. 492 (300 SE2d 335). See also *Wagner v. Timms*, 158 Ga. App. 538 (1) (281 SE2d 295). However, in the cases sub judice the court did not base its judgment

upon whether or not there were genuine issues of material fact remaining for jury determination but granted summary judgment to the defendant doctor and to the defendant manufacturer upon the issue of whether the statute of limitation (two years) barred the plaintiff's action. The trial court's findings of fact and conclusions of law were based only on this issue. Ordinarily, a judgment right for any reason must be affirmed, but where it is apparent that the court rests its judgment on reasons which are erroneous or upon an erroneous legal theory it commits reversible error. See *Smith v. Andrews*, 139 Ga. App. 380, 381 (228 SE2d 320); *Harrington v. Frye*, 116 Ga. App. 755, 756 (159 SE2d 84); *Watson v. Elberton-Elbert County Hosp. Auth.*, 229 Ga. 26, 27 (189 SE2d 66); *Ayers v. Yancey Bros. Co.*, 141 Ga. App. 358, 361 (2) (233 SE2d 471); *Meyers v. Glover*, 152 Ga. App. 679, 683 (3) (263 SE2d 539). Accordingly, we have only for decision here the issue of whether or not the trial court was correct in holding the statute of limitation had run to bar the plaintiff's action. We note first of all that the statute of limitation as to medical malpractice cases is two years (OCGA § 9-3-71, formerly Code Ann. § 3-1102), except where a foreign object has been left in a patient's body, and an action thereon shall then be brought within one year after the negligent or wrongful act or omission is discovered (OCGA § 9-3-72, formerly Code Ann. § 3-1103). But, the statute of limitation is tolled by fraud (OCGA § 9-3-96, formerly Code Ann. § 3-807). As to products liability, it is now ten years (OCGA § 51-1-11, formerly Code Ann. § 105-106). With reference to the fraud here we note an old axiom that where a fact rests in the knowledge of a party, and he fails to make it appear, so as to clear up the issue in the case which it involves, the "issue being that of fraud or no fraud the jury may infer against such party on that account; but where the fact is concealed when the party is interrogated concerning it, this of itself suggests fraud." *First Nat. Bank of Winston v. Atlanta Rubber Co.*, 77 Ga. 781 (1). See also *Broughton v. Winn*, 60 Ga. 487 [486], 488, wherein it was stated that concealment of material facts may in itself amount to fraud when direct inquiry is made and the truth evaded. We note here the relationship between a physician and his patient is one of trust and confidence. See *Leagan v. Levine*, 158 Ga. App. 293 (1) (279 SE2d 741); *Sutlive v. Hackney*, 164 Ga. App. 740, 742 (297 SE2d 515). The case of *Sutlive v. Hackney*, supra, goes on to hold that where the parties in a case are in a confidential relationship as between a physician and his patient "there is no requirement that actual fraud be shown in order to come within the purview of [OCGA § 9-3-96] Code Ann. § 3-807 to toll the applicable statute of limitation. 'Where a person sustains towards (another) a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation.

*Morris v. Johnstone*, 172 Ga. 598 (3) (158 SE 308) (1931).' *Brown v. Brown*, 209 Ga. 620 (6) (75 SE2d 13) (1953)." A patient has a right to believe what he is told by his medical doctors about his condition. See *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773 (278 SE2d 653); *Sutlive v. Hackney*, 164 Ga. App. 740, 742, supra. Under the facts here the plaintiff as a patient received a prescription for Inflamase Forte 1% (as claimed) which he believes caused his eye problems. He has testified positively that his defendant doctor has evaded the issue as to whether or not his eye problems were caused by the use of this drug, albeit the physician defendant may not have prescribed Inflamase Forte 1% since he previously had prescribed Inflamase ⅛% and we have no way of ascertaining from the limited facts here that "Inflamase Forte" shown as having been prescribed by the medical doctor is the same as Inflamase Forte 1%. The original prescription in this case was Inflamase ⅛%. Somehow in the process it became Inflamase Forte 1% which the patient used. Furthermore, the patient (a lawyer) being an expert in the law is not necessarily an expert in science, and he has made a tremendous effort to determine the cause of his difficulties, being told it was caused by a corneal disease yet being told by another expert (the defendant in this case) it was not caused by corneal disease but who refused to and did evade the issue of whether or not it was caused by the medication. Under those of the facts of this case admitted by the parties and uncontroverted, this court is unable to ascertain when and if the statute of limitation began to run as to either the fraud or the medical malpractice, if any, or as to the products liability. The record is devoid of any evidence at this point in time as to the cause of the plaintiff's eye problems and whether or not the Inflamase Forte 1% is the cause of his eye problems. But in all events the issue of the statute of limitation as to fraud and as to whether or not it was tolled or not tolled by the evasion as shown in this record remains for jury determination.

*Judgments reversed. Deen, P. J., and Sognier, J., concur.*

DECIDED JUNE 25, 1984 —
REHEARING DENIED JULY 31, 1984 — 

*James T. McDonald, Jr.*, for appellant.
*George W. Hart, Ben L. Weinberg, Jr., Alexander H. Booth, Dan Wingate*, for appellees.