## 71490. TISDALE v. JOHNSON.

(339 SE2d 764)

BIRDSONG, Presiding Judge.

This is a medical malpractice case in which summary judgment was granted to the appellee doctor. The trial court found as follows: "In 1970, the defendant first treated the plaintiff for a nervous breakdown after she had been admitted to University Hospital. The defendant continued to treat the plaintiff with various medications, including thorazine, until October, 1978. In 1975, while under the care of the defendant, the plaintiff began to suffer from her neck pulling to one side and jerking involuntarily. In 1978, her family doctor of 25 to 30 years, Dr. Beddingfield, who was treating the plaintiff for other ailments during the time she was being treated by the defendant, informed the plaintiff that her neck disorders were the side effects of the drug thorazine which was being prescribed by the defendant.

"The plaintiff does not recall whether the defendant ever informed her of the possible side effects of thorazine at any time. Neither did the plaintiff confront the defendant about Dr. Beddingfield's statements nor did she ask the defendant about the drug or its possible side effects.

"In October, 1978, the plaintiff ceased taking all the medications prescribed for her by the defendant of her own accord and upon her own initiative. Prior to 1982, the plaintiff discussed her neck disorders, and the fact that they were the result of side effects from the thorazine prescribed by the defendant, with Dr. Beddingfield, Dr. House, and Dr. Yost. The plaintiff filed suit against this defendant alleging medical malpractice on July 18, 1984.

"The court hereby finds that the statute of limitations applicable in this case is that designated for medical malpractice actions and set forth in OCGA § 9-3-71 as two years from the date on which the negligent or wrongful act or omission occurred. However, where there exists fraud by the physician defendant which conceals his wrongful or negligent act or omission from his patient/plaintiff, the statute of limitations is tolled until after the time of plaintiff's discovery of the fraud. OCGA § 9-3-96; *Sutlive v. Hackney*, 164 Ga. App. 740, 742 (297 SE2d 515) (1982); *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278, 280 (306 SE2d 366) (1983); *Lorentzson v. Rowell*, 171 Ga. App. 821, 825 (321 SE2d 341) (1984). Regardless of whether there was actual or constructive fraud on the part of the defendant sufficient to toll the statute of limitations in the case sub judice that issue is not decided here, in 1978 the plaintiff was informed by a medical doctor that her neck disorders were the result of the use of thorazine prescribed for her by the defendant. Thus, even presuming fraud by the defendant, the statute of limitations on this medical malpractice action began to run on the date in 1978 when she learned of the cause

of her neck disorders. Two years having run since that date in 1978 before the filing of this action on July 18, 1984, said action is barred by the statute of limitations."

The question concerning us on appeal is not whether any fraud or concealment on the part of the appellee doctor existed to toll the statute of limitations; there is no evidence that he knew Mrs. Tisdale was suffering from any ill effects of the thorazine. Under these circumstances, we do not see how Johnson can be found culpable of a failure to tell Mrs. Tisdale her ill effects might be caused by the thorazine when the evidence shows she took the drug eight years yet never informed him she suffered what she must have thought were notable side effects. The plaintiff is entitled to repose trust and confidence in her doctor, but we know of no case or precept which justifies her in investing *blind* trust. The doctor is not a mind reader. Moreover, the length of time she took the drug apparently without demur negates any notion that Johnson should have divined she was having a problem with it.

The only question, as we see it, is whether her belated discovery that the thorazine might have caused her brain damage, and not merely an unpleasant side effect, tolls the statute of limitation. " '(T)he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.' " *Allrid v. Emory Univ.*, 249 Ga. 35, 36 (285 SE2d 521). As to discovery of a particular distinct injury although other problems had been earlier experienced, see *Anderson v. Sybron Corp.*, 165 Ga. App. 566 (299 SE2d 160).

We have repeatedly held that "[t]he basic law involving the statute of limitation [in medical malpractice cases] is that the suit should have been brought within 2 years after the plaintiff, *in the exercise of ordinary care*, discovered the injury to himself by reason of the negligent act or acts of the defendant." (Emphasis supplied.) *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 774 (278 SE2d 653). "It is well settled that questions of negligence, diligence, contributory negligence, proximate cause, and *the exercise of ordinary care for one's protection*, ordinarily are to be decided by a jury." Id. However, we think there is no genuine issue of material fact that the plaintiff in this case did not exercise ordinary care for her own protection. She took the drug for eight years, without any evidence that she called to Dr. Johnson's attention that she suffered ill effects. She thought enough of the unpleasant effects to mention them to another doctor, who told her they were only side effects, perhaps natural side effects, but she still did not mention them to Dr. Johnson. No reason appears why she was justified to imagine the second doctor would report to Dr. Johnson, and if there was such a reason, it is not Dr. Johnson's fault that the second doctor did not tell him. During the

passage of eight years, Dr. Johnson had no reason to know the plaintiff was suffering unpleasant "side effects"; indeed he had cause to believe she was not. If she had told him of the problem when it arose, or reasonably soon enough, the doctor could have stopped or changed the medication and thereby might have obverted the brain injury she now claims she has sustained. At least he could have acted to avoid it, and protect himself. We find no reason whatsoever to fault the doctor for her own total failure to exercise care for her protection. To hold otherwise than we do would be the same as saying she had *no* duty to exercise ordinary care for her own protection.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

Because I believe that the rationale of *Shved v. Daly*, 174 Ga. App. 209 (329 SE2d 536) (1985) is applicable to the facts of this case, I concur in the judgment of the majority affirming the grant of summary judgment to appellee.

DECIDED JANUARY 9, 1986.

*Michael C. Garrett*, for appellant.
*Wiley S. Obenshain III, Anne Smith*, for appellee.